SEASONS COAL COMPANY, INC. ET AL., APPELLANTS, *v.* CITY OF
CLEVELAND, APPELLEE.

[Cite as Seasons Coal Co. *v.* Cleveland (1984), 10 Ohio St. 3d 77.]

(No. 83-383—Decided April 18, 1984.)

*Climaco, Seminatore, Lefkowitz & Kaplan Co., L.P.A., Mr. John R. Climaco* and *Mr. Paul S. Lefkowitz,* for appellants.

*Mr. John D. Maddox,* director of law, *Mr. Michael A. Pohl* and *Mr. Richard F. Horvath,* for appellee.

*Per Curiam.* The appellee city contends that its contract with appellant Seasons was void for fraud because the affidavit submitted with Seasons' bid contained a forged signature. The city also argues that the contract with Seasons was void because the alleged forged affidavit was submitted by Seasons in order to evade the competitive bidding requirements set forth in Section 108 of the Cleveland City Charter.[1]

After reviewing extensive testimony and numerous exhibits, the trial court held, *inter alia,* that there was no intent to defraud the city on the part of Seasons, and that the contract was entered into in accordance and compliance with the Cleveland City Charter.

The central issue before us in the case *sub judice* is whether the trial court's ruling that the forged affidavit did not constitute fraud in the inducement and did not violate Section 108 of the Cleveland City Charter was correctly reversed by the court of appeals as being against the manifest weight of the evidence.

In reviewing the trial judge's decision, the court of appeals majority apparently acted pursuant to its grant of authority set forth in App. R. 12(C).[2] See, also, *Bridgeport Bank Co.* v. *Shadyside Coal Co.* (1930), 121 Ohio St. 544; *Chester Park Co.* v. *Schulte* (1929), 120 Ohio St. 273.

While we agree with the proposition that in some instances an appellate court is duty-bound to exercise the limited prerogative of reversing a judgment as being against the manifest weight of the evidence in a proper case, it

---

[1] Section 108 of the Charter of the city of Cleveland provides:

"All contracts involving any expenditure in excess of three thousand five hundred dollars ($3,500.00) shall first be authorized and directed by ordinance of Council. When so authorized and directed, the director of the department involved shall make a written contract with the lowest and best bidder, after advertisement once a week for two consecutive weeks in the City Record. There shall be no splitting of orders to avoid the effect of this section, and any contract made contrary to or in evasion of the foregoing provisions of this section, shall be illegal and void."

[2] App. R. 12(C) provides as follows:

"In any civil action or proceeding which was tried to the trial court without the intervention of a jury, and when upon appeal a majority of the judges hearing the appeal find that the judgment or final order rendered by the trial court is against the manifest weight of the evidence and do not find any other prejudicial error of the trial court in any of the particulars assigned and argued in the appellant's brief, and do not find that the appellee is entitled to judgment or final order as a matter of law, the court of appeals shall reverse the judgment or final order of the trial court and either weigh the evidence in the record and enter the judgment or final order that the trial court should have rendered on the evidence or remand the case to the trial court for further proceedings; provided further that a judgment shall be reversed only once on the manifest weight of the evidence."

is also important that in doing so a court of appeals be guided by a presumption that the findings of the trier-of-fact were indeed correct.[3]

The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. The interplay between the presumption of correctness and the ability of an appellate court to reverse a trial court decision based on the manifest weight of the evidence was succinctly set forth in the holding of this court in *C.E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261]:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."

See, also, *Frankenmuth Mut. Ins. Co.* v. *Selz* (1983), 6 Ohio St. 3d 169, 172; *In re Sekulich* (1981), 65 Ohio St 2d 13, 16 [19 O.O.3d 192].

We are of the opinion that the court of appeals failed to give the trial court's decision a presumption of correctness in the case at bar. We believe that an appellate court should not substitute its judgment for that of the trial court when there exists, as in this case, competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge. A careful review of the record reveals that the trial court's findings are corroborated by competent and credible evidence.

With respect to the issue of fraud, the trial court found wanting an intent by Seasons to defraud the city. Although it was admitted at trial that the signature affixed to the affidavit was not genuine, the testimony elicited from Cali and Schlabach concerning the events leading up to the submission of the affidavit negated a finding that the document was *intended* to defraud or mislead the city.[4]

Similarly, the trial court's holding that the contract was not rendered void by the Cleveland City Charter was also supported by competent and

---

[3] See 5 Ohio Jurisprudence 3d (1978) 191-192, Appellate Review, Section 603, which states:

"* * * [I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

[4] As we noted in *Logsdon* v. *Graham Ford Co.* (1978), 54 Ohio St. 2d 336, 340, at fn. 2 [8 O.O.3d 349]:

"* * * to be actionable every fraud must consist of, *inter alia,* (1) an actual or implied false representation of, or concealment of, a material fact, (2) with knowledge of the falsity, or such utter disregard for the truth or recklessness that knowledge may be inferred, and (3) the intention to induce the plaintiff to rely upon the misrepresentation. See 24 Ohio Jurisprudence 2d 635, Fraud and Deceit, Section 20; Prosser, Law of Torts (4 Ed.) 685-686, Section 105."

credible evidence. The city contends that Schlabach's name was submitted in order to gain the contract, and that Seasons had all along intended to use allegedly substandard coal from the substitute supplier, Alexander Coal Co. However, competent and credible testimony given at trial indicates that Seasons intended to use Schlabach as its supplier, and in fact did so, until Schlabach terminated his supply of coal to Seasons for not being paid in a timely manner. Additional evidence was given tending to show that the city did in fact orally authorize the substitution of another supplier.

Another basis of claimed fraud concerned the quality of coal delivered by Seasons to the city under the contract. As to this contention, the trial court found that "[t]he City did not introduce any credible evidence that the coal shipped to the City by Seasons under the contract did not meet the contract specifications."

In reversing this finding, the court of appeals majority found that the coal delivered by Seasons was "outrageously deficient," by relying on tests undertaken by the city which measured various components of coal quality from selected samples of Seasons' deliveries. The results of these tests were given great importance by the appellate court, but the trial court, as well as the dissenting judge on the court of appeals, cast serious doubt on the reliability and credibility of this evidence. Obviously, the trial court believed that the city had not fulfilled its burden of proving that the coal was below the specifications of quality required under the terms of the contract.

Without expounding upon the various particulars submitted within this contention, we believe that the court of appeals failed to give the trial court's decision the proper deference it deserved. A careful review of the record indicates that the trial court's finding was supported by competent and credible evidence. A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal, especially to the extent where the appellate court relies on unchallenged, excluded evidence in order to justify its reversal.

The record before us also indicates that the city never rejected any of the coal shipments by invoking its rights under R.C. 1302.65. The failure of the city to seasonably reject any of the coal constituted acceptance of the goods after a reasonable time had elapsed. If the coal was substandard, as the city contends, or "outrageously deficient," as the appellate court majority characterizes it, R.C. 1302.65(C) required the city to notify Seasons of any breach within a reasonable time of discovery, or be barred from any remedy.[5]

---

[5] R.C. 1302.65, which adopts UCC 2-607, provides in relevant part:

"(A) The buyer must pay at the contract rate for any goods accepted.

"(B) Acceptance of goods by the buyer precludes rejection of the goods accepted and if made with knowledge of a non-conformity cannot be revoked because of it unless the acceptance

Therefore, we hold that the trial court's judgment was supported by some competent, credible evidence going to all the essential elements of the instant case, and we reverse the court of appeals finding that this judgment was against the manifest weight of the evidence.

Turning our attention to the element of damages, we note that the trial court awarded Seasons and Alexander Coal Co. the full measure of consideration due under the contract, plus interest, for the amount of coal delivered to and used by the city. The trial court held against the city on its counterclaim for compensatory and punitive damages. The court of appeals reversed, and found that this holding was also against the manifest weight of the evidence, and held in favor of the city on its counterclaim, awarding it nominal damages of $1. The court of appeals majority then held, *sua sponte,* that the city was entitled to punitive damages, and remanded the cause to the trial court to determine the amount of those damages.

Our posture with respect to the damages element in the case *sub judice* is the same as our holding with regard to the other issues before this court, and we follow the reasoning of *C.E. Morris, supra.* In doing so, we wish to point out that neither of the courts below was able to conclude that the city had a credible claim for compensatory damages. Further, even if we were to affirm the court of appeals as to the city's counterclaim, we believe that punitive damages are highly irregular absent proof of any actual damages. Therefore, we uphold the standard this court set forth in paragraph one of the syllabus in *Richard* v. *Hunter* (1949), 151 Ohio St. 185 [39 O.O. 24]:

"Exemplary or punitive damages may not be awarded in the absence of proof of actual damages."

In conclusion, we note that our holding in the instant case should not be construed to absolutely bar a court of appeals from ever reversing a trial court decision as being against the manifest weight of the evidence; in a proper case, a reviewing court can and should so reverse. Rather, this decision stands as a reaffirmation of the judicial philosophy of appellate review as enuniciated in *C.E. Morris, supra.*

---

was on the reasonable assumption that the non-conformity would be seasonably cured but acceptance does not of itself impair any other remedy provided by sections 1302.01 to 1302.98, inclusive, of the Revised Code for non-conformity.

"(C) Where a tender has been accepted:

"(1) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy; and

"(2) if the claim is one for infringement or the like pursuant to division (C) of section 1302.25 of the Revised Code and the buyer is sued as a result of such a breach he must so notify the seller within a reasonable time after he receives notice of the litigation or be barred from any remedy over for liability established by the litigation.

"(D) The burden is on the buyer to establish any breach with respect to the goods accepted;"

Accordingly, we reverse the judgment of the court of appeals.

*Judgment reversed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.

LOCHER, J., concurs in judgment only.