FINN et al., Appellants and Cross–Appellees,

v.

KRUMROY CONSTRUCTION COMPANY, Appellee and Cross–Appellant.

[Cite as *Finn v. Krumroy Constr. Co.* (1990), 68 Ohio App.3d 480.]

Court of Appeals of Ohio,
Summit County.

No. 14288.

Decided July 5, 1990.

*Richard V. Zurz* and *Stanley P. Aronson*, for appellants and cross-appellees.

*Orval Hoover* and *Robert Heydorn*, for appellee and cross-appellant.

CIRIGLIANO, Judge.

This cause is before this court upon the appeal of Bruce and Deborah Finn from the judgment of the Common Pleas Court of Summit County finding in favor of the appellee, Krumroy Construction Company ("Krumroy") for a breach of a construction contract to remodel appellants' home. The court found that the appellee perfected its mechanic's lien on appellant's property and permitted enforcement of a $67,224.34 award. However, the trial court denied appellee's motion for prejudgment interest. Both parties appeal.

Bruce S. Finn and Deborah Finn are the owners and residents of 2635 Yellow Creek Road, Akron, Ohio 44313. The Finns purchased the home in 1976 for $73,000. Krumroy is an Ohio corporation engaged in the general constructing business since the 1950's.

These two parties have entered into contractual relationships for extensive remodeling of the Finn residence on three separate occasions, commencing in 1981, again in 1984 and 1985. These three remodeling projects are identified as Phase I, Phase II, and Phase III, respectively. The subject of the present dispute concerns only work involved in Phase III of the remodeling.

On May 10, 1985, the parties entered into a written contract for an addition and other modifications to the Finns' house. The contract, in the form of a letter, was prepared by Krumroy and referred to itself as an estimate. During the planning of Phase III, Bruce Finn expressed concern for the project's cost and sought to have the work completed for no greater than

$200,000. In the May 10 letter, Krumroy's president, James Cozad, itemized the work to be done and estimated costs for certain allowances involving some additional work discussed by the parties but not yet finalized. The contract price as stated by the letter was $153,580. This total price reflected an estimated cost for labor and materials, and a percentage for Krumroy's overhead (five percent) and commission (five percent). These figures are based on the plans prepared by Krumroy and inspected by Finn.

Krumroy billed the Finns on a monthly basis for work performed the previous month. The Finns paid in full each month without any objections until October 1985. At that point in time, Mr. Finn was not pleased with the quantity or quality of the work performed and withheld payments for work completed during the two previous months. Cozad informed the Finns that unless prompt payment was made, Krumroy would cease work on the project and execute a lien on the house. In December 1985, Mrs. Finn paid the unpaid balance and Krumroy continued the remodeling.

The relationship erupted once again at the end of December when the Finns received that month's invoice. On January 7, 1986, Mr. Finn informed Krumroy that he did not intend to pay for work completed unsatisfactorily and ordered the construction workers off the job site. At the time of this work stoppage, the Finns had already paid more than $78,000 above the $153,580 estimated cost. Krumroy claimed that the Finns owed another $77,224.39 for work completed but remaining unpaid. Including the unpaid balance, Krumroy's total charge for the project was $355,644.89.

On March 20, 1986, the Finns filed a complaint in the within matter against Krumroy alleging breach of contract, breach of warranties, negligence, misrepresentation and fraud arising from the written contract. The Finns contended in the trial court that the May 10 letter had established a "fixed cost" contract between the parties and that there is no obligation for excess charges above the fixed contract price. The complaint sought $675,000 in compensatory damages and $250,000 in punitive damages.

Krumroy's answer denied the majority of Finns' allegations and asserted the affirmative defenses of waiver, estoppel and laches. On May 6, 1986, Krumroy filed a counterclaim for breach of contract and requested foreclosure upon a mechanic's lien encumbering the Finns' home for the unpaid balance of the contract in the amount of $77,224.39. Krumroy's response to Finns' contention was that the contract between the parties was a "cost-plus fee" contract.

A cost-plus contract would estimate the construction costs, and the homeowner's obligation would be for all actual costs plus overhead and commission charged by the builder. Such a contract arrangement was estab-

lished for the first two phases of the remodeling. Krumroy claimed that this was the only type of arrangement that would lend itself to the control and flexibility that the Finns required to permit modifications and amendments during the course of the project.

In response to Krumroy's counterclaim, the Finns argued that even if the written agreement is construed as a cost-plus contract, a review of the contract negotiations reveals an intent to impose a maximum cost of $200,000 for Phase III and that the builder bears the burden of proving that any cost in excess of the limitation must be reasonable in order to create an obligation on the homeowner to pay.

A trial to the court was held during which fourteen witnesses testified and over one hundred exhibits were introduced. On October 21, 1988, the trial court issued its findings of facts and conclusions of law holding, *inter alia,* that evidence supports Krumroy's view of a cost-plus contractual relationship. The court also found that some of Krumroy's work was improperly completed and in need of correction. The court determined the correction cost to be $10,000. This amount was set off against Krumroy's counterclaim award of $77,224.34 and the court entered judgment in Krumroy's favor in the amount of $67,224.34.

The trial court also concluded that Cozad, who was responsible for preparing the building plans for the job, did not violate the requirements of R.C. 4703.18(B) and (C), which prohibits unauthorized persons from practicing architecture. Finally, having found that Krumroy perfected its mechanic's lien and permitting enforcement of same, the trial court denied Krumroy's motion for prejudgment interest.

On December 30, 1988, the Finns filed a motion for new trial pursuant to Civ.R. 59. A $75,000 bond was set and an order staying execution of judgment was entered during the pendency of the new trial motion. By order dated September 26, 1989, the trial court denied the Finns' new trial motion.

On appeal, the Finns assign four assignments of error. Krumroy filed a cross-appeal, presenting one assignment of error.

### Assignment of Error I

"The predecessor trial court prejudicially erred by misapplying and misinterpreting the opinions in *Charles A. Burton, Inc. v. Durkee* (1952), 158 Ohio St. 313 and *Charles A. Burton, Inc. v. Durkee* (1954), 162 Ohio St. 433 and hence, by finding that a 'cost-plus' contract existed between the parties."

■ The Finns charge that the evidence does not support the existence of a cost-plus contract and that the trial court misrelied on the authority of *Charles A. Burton, Inc. v. Durkee* (1952), 158 Ohio St. 313, 49 O.O. 174, 109

N.E.2d 265 (*"Burton I"*), and *Charles A. Burton, Inc. v. Durkee* (1954), 162 Ohio St. 433, 55 O.O. 247, 123 N.E.2d 432 (*"Burton II"*), in establishing the type of contractual relationship. We disagree.

The Finns' interpretation of the trial court's reasoning is inaccurate. The trial court's reliance on the cited authority was not to establish the type of contractual relationship in existence. Rather, the case law was applied to determine the necessary burdens of proof as between the parties. This analysis was necessary in light of the Finns' claim that their obligation to pay for the actual costs of the project was dependent upon Krumroy's ability to show that such costs were reasonable.

Prior to the application of the *Burton* cases, the trial court concluded from the preponderance of persuasive evidence presented that the parties established a cost-plus contract. The letter of May 10, 1985, clearly provides the Finns with control over such modifications as the fireplace, greenhouse windows, rough and finished hardware and special entry doors. During the course of Phase III, the Finns exercised their contract options numerous times. The Finns were made aware that the allowances were causing the actual project costs to exceed the estimated costs. Yet, for several months, the Finns paid all the costs associated with the contract modifications. It was not until the following year, in January 1986, that the Finns objected to the amount of cost overruns.

An important factor leading to the trial court's conclusion was the customary course of dealing established by the parties during the first two phases of the remodeling work. In 1981, the estimated cost of Phase I was $50,000 but the actual costs were much higher. Although unable to exactly recall the total amount, Bruce Finn testified that he paid for all subsequent modifications. The estimated cost for Phase II was originally written at $110,000 and later modified to between $85,000 and $90,000. The final cost for this phase was $100,000, and once again Mr. Finn paid. In fact, Mr. Finn testified at trial that he felt obligated to pay for costs in excess of the estimate because of the numerous revisions.

As further evidence of the parties' course of dealing, Cozad testified that the language found in the Phase III contract was identical to that found in both Phase I and Phase II. All of the contracts provided an estimated cost, a listing of certain items not covered that were the owner's responsibility and a listing of certain material allowances. Cozad also stated that the same billing procedure was used in all phases of construction. All of the verbal changes in Phase III were handled in the same manner as those implemented in the earlier stages.

As with the prior projects, the Finns made frequent changes in Phase III, thereby adding greatly to the time and costs consumed in construction. Substantial additional costs for labor and materials were necessitated by changes in the plan and style of construction. With such a developed course of conduct, the Finns cannot claim ignorance of the construction and billing procedures to relieve their contractual obligations. The summation of the evidence leads to the conclusion that the Finns never contracted for specific work at a specific price and that they required a type of contract that would facilitate the numerous amendments anticipated during an extensive remodeling project.

With the contract in place, the trial court applied the *Burton* cases to outline the burdens of proof required to satisfy the Finns' charge of excessive costs. Appellants argue that even if a true cost-plus contract was in effect, the disparity between the actual costs and the estimated costs makes it a presumption that there was extravagance and waste, and that under such circumstances the burden of proof should be on the builder to show the reasonableness of the costs. This argument is incorrect.

In *Burton I, supra,* the Ohio Supreme Court first rejected this reasoning holding that if such a rule were applicable to cost-plus fee contracts, the builder can only recover the proven reasonable labor and material costs. *Burton I, supra,* 158 Ohio St. at 325–326, 49 O.O. at 179, 109 N.E.2d at 271. This would be in contravention of the unambiguous contract language and the established course of dealing between these two parties. Again in *Burton II, supra,* appellants' proposed rule of law was denounced when the court stated:

"There is no established principle in the law that one who contracts to do certain work for another must disprove his default as a part of his affirmative case for compensation. In fact the opposite must be the general rule. Honesty and good faith are always presumed." *Burton II, supra,* 162 Ohio St. at 443, 55 O.O. at 252, 123 N.E.2d at 437.

The Finns have failed to satisfy the burden required although they did present evidence sufficient to show that some of the construction work was defective.[1] The court below heard evidence on the issue of bad workmanship and determined that the history of the house indicates a sophisticated complexity tending to escalate costs. The court found that a fair setoff for the needed work chargeable to Krumroy was $10,000.

---

1. The trial court also found that many of the problems were caused when Krumroy was excluded and prevented from doing any more work and from the Finns' failure to take corrective and maintenance action for nearly three years.

We find the record replete with evidence supporting the trial court's judgment and we agree with its characterization of the remodeling contract as a cost-plus fee agreement. In such a lengthy trial where witness credibility is an important issue, the trial court is in the best position to make such an assessment. We will not substitute our judgment for that of the trial court. Accordingly, we deny appellants' first assignment of error.

### Assignment of Error II

"The predecessor trial court prejudicially erred by failing in its findings of fact and conclusions of law and in its judgment entry to address and rule upon the appellants' claims of fraud and deceptive trade practices, in violation of Ohio Revised Code Chapter 1345 and the regulations promulgated thereunder, and by failing to award damages for same."

The Finns assert that Krumroy did not comply with the requirements of the Consumer Sales Practices Act, R.C. Chapter 1345. This statutory section makes it unlawful for one performing repairs or services to engage in conduct determined unfair, deceptive or unconscionable, as provided in R.C. 1345.02 and R.C. 1345.03, respectively.

Pursuant to the Consumer Sales Practice Act, the Director of Commerce has promulgated regulations set forth in the Ohio Administrative Code. The Finns contend that Krumroy violated Ohio Adm.Code 109:4–3–05(D)(3), which states that one must obtain authorization from the customer when performing services amounting to costs in excess of ten percent of the estimated cost. The Finns also argue that the evidence establishes that Krumroy violated Ohio Adm.Code 109:4–3–05(D)(11), which prohibits a material understatement of the estimated cost of the services. The trial court's findings of fact and conclusions of law, pursuant to Civ.R. 52, did not expressly address these alleged violations.

However, this omission in the trial court's judgment is not prejudicial to the appellants. The failure of the trial court to make findings of facts and conclusions of law as to every issue presented constitutes harmless error when the record, taken as a whole, along with the court's order provides an adequate basis to dispose of all the claims presented. *Davis v. Wilkerson* (1986), 29 Ohio App.3d 100, 101, 29 OBR 112, 113, 503 N.E.2d 210, 211. In expressly resolving the issue of the parties' contractual relationship, the trial court implicitly negated appellants' claims of fraud and deceptive sales practices and, thus, substantially complied with the requirements of Civ.R. 52. *Id.*

The trial court's findings indicate that the Finns exercised their right to amend the work performed and that the additional work was in fact

authorized. It was under the Finns' orders that changes were made. Given the history of the dealings between the parties, we cannot say that there was a violation of the Ohio Sales Practices Act. Accordingly, we overrule appellants' second assignment of error.

### Assignment of Error III

"The predecessor trial court prejudicially erred by finding as a matter of law that the appellee, even though not a licensed architect, could validly charge [for] the preparation of architectural drawings pursuant to Ohio Revised Code Section 4703.18."

The Finns insist that they are entitled to a setoff for fees charged by Krumroy for architectural services. In its order, the trial court found that Krumroy satisfied the requirements of R.C. 4703.18, which permits nonarchitects, such as engineers and contractors, to secure permits to provide drawings for structures if they sign the permits without using the title of architect. The Finns claim that this statute does not imply that such persons can collect fees for architectural services, in that this would amount to the unlicensed practice of architecture.

There is no proof that Krumroy charged any fees for its drawings. The record only reflects testimony estimating what an architect might charge for such services. In fact, the trial testimony indicates that Cozad directly answered this question, stating that no fees were collected for the drawings. Additionally, the monthly invoices indicate that the percentage charge for the builder's overhead and commission remained constant each month, even in the months when no drawings were prepared.

Accordingly, we reject appellants' third assignment of error.

### Assignment of Error IV

"The successor trial court prejudicially erred by failing to grant Appellants' motion for a new trial, pursuant to O.R.C.P. 59."

The fourth assignment of error challenges the trial court's denial of appellants' motion for a new trial filed pursuant to Civ.R. 59(A) and Civ.R. 63(B). Civ.R. 63(B) provides:

"If for any reason the judge before an action has been tried is unable to perform the duties to be performed by the court after a verdict is returned or findings of fact and conclusions of law are filed, another judge designated by

the administrative judge, or in the case of a single-judge division by the chief justice of the supreme court, may perform those duties; but if such other judge is satisfied that he cannot perform those duties, he may in his discretion grant a new trial."

The Finns argue that the findings of facts and conclusions of law issued by the predecessor trial court were inadequate to enable the successor trial court to properly consider the motion for new trial.[2] At the source of the Finns' claim is the charge that the predecessor trial court did not address all of the issues in its findings. In addition, appellants seek a new trial because the original trial court failed to state its basis for determining the $10,000 setoff which actually reduces the Finns' liability to Krumroy.

██ As we have previously noted, the trial court's findings of fact and conclusions of law either expressly or implicitly determined all of the legal issues presented. As for the setoff amount, the trial court adequately stated that the amount is based upon the cost of corrective work necessitated by Krumroy's faulty labor. There is no requirement that the trial court specify the items in need of repair.

██ A successor trial court is capable of presiding over a motion for new trial as Civ.R. 63(B) places such a ruling entirely within the trial court's discretion. Our standard of review is limited to a determination of whether the successor court abused its discretion in overruling the new trial motion. *Elsnau v. Weigel* (1983), 5 Ohio St.3d 77, 5 OBR 131, 448 N.E.2d 1377. Upon our review of the record, we find no such abuse. Accordingly, appellants' fourth assignment of error is denied.

### Cross–Assignment of Error

"The trial court erred by denying cross-appellant's motion for prejudgment interest."

On cross-appeal, Krumroy claims that it is entitled to prejudgment interest at the rate of ten percent per annum on the judgment amount of $67,224.34 from December 1985.

██ Krumroy relies upon *Shaker Savings Assn. v. Greenwood Village, Inc.* (1982), 7 Ohio App.3d 141, 7 OBR 184, 454 N.E.2d 984, which held

---

**2.** This case was re-assigned to another trial judge due to the retirement of the originally assigned trial judge.

that prejudgment interest is warranted when the amount is capable of ascertainment by mere computation. Thus, to avoid prejudgment interest, the debt must be unascertainable. *Id.* at 143, 7 OBR at 186–187, 454 N.E.2d at 986–987. When the amount cannot be ascertained prior to trial due to ambiguity surrounding the debt amount, there can be no proper calculation of interest until the trial court removes the ambiguity. *Mahon–Evans Realty, Inc. v. Spike* (1986), 33 Ohio App.3d 268, 515 N.E.2d 953.

Krumroy claims that a simple reading of the contract reveals the calculation for payment. However, the amount of damages due herein was known only after judicial determination was made as to the terms of the parties' contract. As the amount of damages was not ascertainable at any time prior to final disposition of all the issues raised, the debt is not subject to prejudgment interest. Furthermore, even if the contract terms unambiguously stated the basis for calculation of the debt, there remained a good faith dispute over the allegation of faulty workmanship. This setoff amount precludes any award of prejudgment interest. Accordingly, Krumroy's assignment of error presented on cross-appeal is overruled.

## Summary

Based upon the reasons stated we affirm the judgment of the trial court in all respects.

*Judgment affirmed.*

CACIOPPO, P.J., and HAYES, J., concur.

JERRY L. HAYES, J., of the Portage County Domestic Relations Court, sitting by assignment.