**WINTER, Appellant,**

**v.**

**WINTER, Exr., et al., Appellees.**

[Cite as *Winter v. Winter* (1995), 102 Ohio App.3d 792.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA94–09–076.

Decided May 22, 1995.

*Nichols, Speidel & Nichols* and *Donald W. White,* for appellant.

*Burreson, Bradford & Hill* and *Allen L. Burreson,* for appellee, William Nicholas Winter, Executor of the Estate of William C. Winter.

*Robert I. Doggett,* for appellees, William Nicholas Winter and Michael Paul Winter.

KOEHLER, Judge.

Plaintiff-appellant, Jan Kimberlain Winter, appeals a decision entered by the Clermont County Court of Common Pleas, Probate Division, which found that an antenuptial agreement entered into between appellant and the decedent, William C. Winter ("Winter"), was valid and binding.

Appellant and Winter were married on February 14, 1992. Prior to their marriage, on January 13, 1992, the parties entered into an antenuptial agreement. The record indicates that Winter contacted his attorney concerning the preparation of the agreement and that appellant and Winter prepared lists of their respective assets to be included in the agreement. The antenuptial agreement was executed by the parties and notarized on January 13, 1992. Winter died on May 28, 1993.

On July 28, 1993, appellant filed a complaint seeking to set aside the antenuptial agreement as ambiguous due to the presence of certain modifications that had been made to the document. Specifically, the antenuptial agreement, as presented to the trial court, contains strikeouts of various assets belonging to Winter and handwritten alterations regarding the administration of each spouse's estate. Defendants-appellees, William Nicholas ("Nick") Winter and Michael Paul Winter, are Winter's two adult sons by a previous marriage, one of whom is serving as executor of his father's estate.

A bench trial was held on June 14, 1994. The trial court found the antenuptial agreement valid and binding upon appellant and entered judgment in favor of appellees.

On appeal, appellant asserts one assignment of error, which reads as follows:

"The trial court erred to the prejudice of plaintiff-appellant by failing to determine that the antenuptial agreement was modified prior to the marriage thus rendering the agreement ambiguous with regard to the intention of the parties."

■ Essentially, appellant's argument is that the decision of the trial court is against the manifest weight of the evidence. It is well established in Ohio that " '[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' " *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276 (quoting *C.E. Morris Co. v. Foley Constr. Co.* [1978], 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 262, 376 N.E.2d 578, 579). Based upon a review of the record before us, we find competent, credible evidence to support the judgment rendered by the trial court.

Within her single assignment of error, appellant asserts four issues for review. The first two issues will be addressed simultaneously. In the first issue presented, appellant contends that the antenuptial agreement was modified prior to the marriage of the parties. Appellant's second issue asserts that the modifications allegedly made prior to the marriage render the agreement ambiguous with respect to the intentions of the parties and that the agreement should be set aside.

In support of her contentions, appellant testified that the agreement was modified by both parties on the day of execution, January 13, 1992, approximately one month prior to the parties' Valentine's Day marriage. Appellant also testified that the various assets belonging to Winter and listed in the antenuptial agreement were crossed out by him because he wanted appellant to have those items in the event of his death. Among the assets crossed out in the antenuptial agreement were certain pension plans belonging to Winter. The record indicates that Winter had changed the beneficiary of some of his pension plans, including the plans crossed out in the agreement, from his sons to appellant prior to the marriage.

Appellees presented evidence that the agreement was not modified until after the marriage. Specifically, Winter's son, Nick, testified that nine months after Winter's marriage to appellant, Winter showed Nick his will and the antenuptial agreement. Nick further testified that when his father showed him the antenuptial agreement, there were no strikeouts or handwritten changes on the docu-

ment. Sherry Shrage, a notary public, testified that on January 13, 1992, Winter and appellant executed the antenuptial agreement in her presence and that she notarized the document. Shrage testified that when she notarized the document, there were no strikeouts or handwritten alterations on the signature page.

Appellees also offered evidence, through the testimony of Nick Winter, that Winter intended the crossed-out assets to pass to his sons in the event of his death. Nick testified that Winter's will listed himself and his brother as the only beneficiaries of Winter's estate.

The trial court upheld the antenuptial agreement and found that appellant had "failed to establish by the requisite burden of proof that the antenuptial agreement was ambiguous." The decision states that in making its determination, the trial court considered the testimony presented, the antenuptial agreement executed by the parties, the submitted written closing arguments, and the equitable distribution of assets as contemplated by the antenuptial agreement.

Appellant asserts that the trial court failed to make a finding of fact with regard to when the antenuptial agreement was modified. Appellant argues that the modifications striking out various assets were made prior to the marriage, making the agreement ambiguous with respect to the intentions of the parties. Although the trial court's decision does not explicitly state when the agreement was modified, we find that the trial court's decision finding the agreement unambiguous and enforcing the agreement without the modifications implicitly concludes that the agreement was modified after the marriage.

"The failure of the trial court to make findings of facts and conclusions of law as to every issue presented constitutes harmless error when the record, taken as a whole, along with the court's order provides an adequate basis to dispose of all the claims presented." *Finn v. Krumroy Constr. Co.* (1990), 68 Ohio App.3d 480, 487, 589 N.E.2d 58, 63. Thus, the trial court's express resolution of the ambiguity issue implicitly negates appellant's first issue concerning when the modifications were made to the agreement. *Id.*

Taken together, the entire record and the trial court's decision and judgment entry support the trial court's determination that the agreement is not ambiguous and, as written, contemplates an equitable distribution of each spouse's assets. Therefore, we find that there was some competent, credible evidence to support the trial court's decision with respect to appellant's first two issues presented for review.

■ Appellant's third and fourth issues involve similar claims and will also be considered together. Appellant's third issue presented for review contends that when appellant entered into the antenuptial agreement she did not fully under-

stand its meaning. In her fourth issue presented, appellant claims that she relied upon Winter's representations regarding the effect of the document.

The trial court specifically found that appellant failed to establish that she entered into the antenuptial agreement without full knowledge of the meaning of its terms, or that she was in any way misled into executing the agreement. Thus, the trial court determined that the antenuptial agreement executed by appellant and Winter was a valid and binding document. We agree.

In Ohio, antenuptial agreements are valid and enforceable. *Fletcher v. Fletcher* (1994), 68 Ohio St.3d 464, 628 N.E.2d 1343; *Gross v. Gross* (1984), 11 Ohio St.3d 99, 11 OBR 400, 464 N.E.2d 500. In fact, "Ohio has for over one hundred forty years recognized the validity of antenuptial agreements when the *death* of a spouse is involved." (Emphasis *sic*.) *Sasarak v. Sasarak* (1990), 66 Ohio App.3d 744, 747, 586 N.E.2d 172, 174 (citing *Stilley v. Folger* [1846], 14 Ohio 610).

The leading Ohio case on antenuptial agreements is *Hook v. Hook* (1982), 69 Ohio St.2d 234, 23 O.O.3d 239, 431 N.E.2d 667. The *Hook* court directly responded to appellant's third and fourth issues presented for review, stating:

" 'Ordinarily, one of full age in the possession of his faculties and able to read and write, who signs an instrument and remains acquiescent to its operative effect for some time, *may not thereafter escape the consequences by urging that he did not read it or that he relied upon the representations of another as to its contents or significance.*' " (Emphasis added.) *Id.* at 238, 23 O.O.3d at 241, 431 N.E.2d at 670 (quoting *Kroeger v. Brody* [1936], 130 Ohio St. 559, 566, 5 O.O. 210, 213, 200 N.E. 836, 839).

Appellant testified that she only read one page of the agreement and relied upon Winter's representations as to the agreement's impact prior to signing. Appellant also testified that Winter crossed out certain assets he owned and that when he did so, he informed appellant that those items would be hers if he died.

The evidence indicates that appellant is a mature, intelligent woman. She is experienced in real estate matters and is a licensed real estate agent. In addition, the record establishes that appellant had some contact with Winter's attorney during the preparation of the antenuptial agreement, such that appellant had an opportunity to ask questions about the terms and effect of the document prior to signing. Under the circumstances, appellant cannot escape the consequences of voluntarily entering into the antenuptial agreement by claiming that she did not read the document or that she relied upon Winter's representations.

The trial court's determination that appellant was not misled into executing the document is simply a credibility call. See, *e.g., Solomon v. Main* (Feb. 19, 1985), Knox App. No. 84–CA–12, unreported, 1985 WL 7191. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that

the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons, supra,* 10 Ohio St.3d at 80, 10 OBR at 411, 461 N.E.2d at 1276.

After reviewing the record before us, we find competent, credible evidence to support the trial court's findings with respect to the issues raised by appellant on appeal. Under the circumstances, we conclude that the decision upholding the antenuptial agreement was not against the manifest weight of the evidence. Accordingly, appellant's sole assignment of error is overruled.

*Judgment affirmed.*

WALSH, P.J., and WILLIAM W. YOUNG, J., concur.