OPINION
In a dispute arising out of a contract to purchase a house, defendant-appellant, Perry Bush dba Perry Bush Custom Homes, Inc., et al. ("Perry Bush"), appeals the decision of the trial court to award plaintiffs-appellees, Dennis P. and Lillian Marinich, $50,098 plus prejudgment interest on the Marinichs' breach of contract claim. In a cross-appeal, the Marinichs argue the trial court erred by failing to find Perry Bush violated the Ohio Consumer Sales Practices Act, R.C. 1345, etseq. We affirm the decision of the trial court.
On November 19, 1996, the Marinichs signed a contract with Perry Bush to build a custom house at 3872 Andrews Court, Mason, Warren County, Ohio. The sale price for the land and house was $505,170. The house was built as part of the 1997 "Homearama," an event sponsored by the Greater Cincinnati Home Builders Association. The Homearama attracts tens of thousands of visitors each year and allows local builders to receive exposure. Perry Bush's philosophy for Homearama is to attempt to utilize innovative construction techniques as well as create "personal touches" to the interior design. Perry Bush promised to remove any and all "personal touches" at no cost to the Marinichs if the Marinichs did not like them. Perry Bush did not win awards the previous year and wished to win in 1997. The house did in fact win awards.
The contract provided allowances for the interior finish, fixtures, decorating, and other aspects of the house. Throughout the construction process, Perry Bush and the Marinichs agreed to a series of written change orders. In addition, Perry Bush conceded at trial that some of the changes were never memorialized in writing. Another issue was the personal touches which Perry Bush added to the house. The personal touches included variously shaped ceiling cutouts, curved ceilings and walls, a textured painting above the fireplace and sculptures within the ceiling cutouts. Perry Bush testified that he deliberately tries to be imaginative with the interior design of Homearama houses. After the Homearama, Mr. Bush would not remove all the personal touches until the closing.
Following the Homearama exhibition in June 1997, the Marinichs prepared a "punch list" to address items that needed to be addressed before closing. The punch list primarily concerned minor repairs to the house which the Marinichs felt had yet to be addressed. The punch list was dated July 5, 1997 and contained one hundred six separate items. On July 10, 1997, Perry Bush responded by letter to each of the one hundred six items. For many of the items, Perry Bush stated, without further explanation, "[w]e will address it." The Marinichs felt the response was vague and that a response should indicate that a problem either would be fixed or it would not. On July 14, 1997, Mr. Marinich responded to the July 10, 1997 letter. The letter stated Perry Bush was responsible for correcting all deficiencies and, when the deficiencies were corrected to the Marinichs' satisfaction, the Marinichs were prepared to close. The letter stated the Marinichs would "work closely" with Perry Bush to address the Marinichs' concerns. On July 25, 1997, Perry Bush sent the Marinichs a letter, which stated as follows:
 The last few months have been extremely frustrating for all of us, I just hope we can move forward and complete this transaction. * * *.
 I've enclosed my final response to your punch-out items. Please sign the attached closing papers indicating your acceptance of the final price so we can start making the interior changes you requested. * * *.
 Unfortunately, I am forced to set a date of Tuesday July 29, 1997 at 5:00 p.m. to receive the signed final price agreement. If I do not receive it on or before Tuesday I will assume you do not want to close on this house. Since you would be in breach of contract I will have no other alternative but to put this house on the market on Wednesday July 30 and I will forward this case to my attorney.
Section 8(d) of the contract for sale provides that a condition of closing is that "[t]he residence is substantially complete." The contract does not list a date when closing must be completed. When the Marinichs did not close by July 30, Perry Bush sold the house to an alternative buyer for $489,000.
After a bench trial, the court ruled in a December 3, 1998 decision that Perry Bush unilaterally breached the contract. The court found that the Marinichs were entitled to the return of their down payment ($44,000), plus $6,098 for improvements to the house paid by the Marinichs, plus interest from September 1, 1997. The decision was reduced to a judgment entry entered on December 15, 1998. Perry Bush filed a timely notice of appeal and presents three assignments of error for our review.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED BY FINDING THAT PERRY BUSH "UNILATERALLY TERMINATED" THE CONTRACT, WHEN, AS A MATTER OF LAW, THE MARINICHS HAD FAILED TO PERFORM THEIR DUTIES UNDER THE CONTRACT.
If one party substantially performs its obligations under a contract, that party's breach of a contract term does not relieve the other party's obligation to perform under the contract.Fitzpatrick v. Yeauger (July 9, 1998), Lawrence App. No. 97CA35, unreported, citing Software Clearing House, Inc. v. Intrak, Inc.
(1990), 66 Ohio App.3d 163, 170. Whether a party has substantially performed under the terms of a contract is a question of fact. Volak v. Henderson (July 19, 1995), Lorain App. No. 94CA005815, unreported, citing Jacobs Youngs v. Kent (1921),230 N.Y. 239, 129 N.E. 889, 891. In order for a builder to recover damages based on the theory that the buyers breached the contract after substantial performance by the builder, the burden of showing substantial performance falls upon the builder. MortonBuildings, Inc. v. Dodds (Nov. 16, 1992), Madison App. No. CA92-02-003, unreported, at 3. In determining whether substantial performance has occurred, "[m]ere nominal, trifling, or slight departures, omissions and inadvertencies should be disregarded."Cleveland Neighborhood Health Serv., Inc. v. St. Clair Builders,Inc. (1989), 64 Ohio App.3d 639, 644, citing Ashley v. Henahan
(1897), 56 Ohio St. 559.
As a factual finding of the trial court, the decision by the trial court that substantial performance had not occurred will not be reversed unless the finding is against the manifest weight of the evidence. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80. A finding supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence. Id. The rationale for this appellate standard of review is the trial court is in the best position to evaluate the credibility of witnesses. Id.
Upon reviewing the testimony and exhibits admitted into evidence, we find that the trial court's decision is supported by substantial, credible evidence. The "punch list," by itself, would not have prevented Perry Bush from substantially performing the new house construction. However, in addition to the "punch list," substantial, credible evidence exists that Perry Bush agreed to remove all of the personal touches that the Marinichs did not like. These personal touches were a source of advertising and publicity to Perry Bush and many of them would not have been included but for Perry Bush's goal of winning awards at the 1997 Homearama. The evidence shows that Perry Bush would not remove all the unwanted personal touches until the closing papers were signed. However, the Marinichs believed that the personal touches would be addressed prior to closing.
Perry Bush argues that substantial performance had been completed and the Marinichs were required to close within a reasonable time. Therefore, Perry Bush argues the July 25, 1997 letter and ultimatum to the Marinichs did not constitute a material breach because the Marinichs had breached the contract by refusing to close. In reviewing the record, the personal touches were not minor or cosmetic. Many of these personal touches are unusual and, therefore, their appeal would be based on the subjective whims of a particular individual. The changes profoundly affect the overall appearance of the interior of the house and many of them were included solely for the benefit of Perry Bush. Moreover, they are an unusual aspect of the agreement because many of these personal touches were not wanted by the buyers. Substantial performance is a question of fact. Under these circumstances, the trial court was entitled to conclude that substantial performance required that the unique, unwanted personal touches be removed prior to closing.
In addition, the price of the house was in dispute. Evidence in the record suggests the price Perry Bush sought to receive for the house, $570,072, was not correct. The Marinichs attempted to negotiate the final price of the house by offering $540,421. It is clear that a contributing factor to this dispute was the failure of either party to insist on all changes to the contract be in writing. The trial court determined that neither price was correct and the ultimatum by Perry Bush amounted to a breach.[1]
Since the contract did not specify a closing date, the Marinichs were obligated to close within a "reasonable time."Chaney v. Ramsey (Apr. 7, 1999), Pike App. No. 98CA614, unreported. As with substantial performance, a "reasonable time" is a question of fact for the trier of fact to resolve. Id.
Since we have concluded that credible evidence exists to support the trial court's decision that substantial performance had not occurred, the Marinichs were entitled to delay closing past the Perry Bush's ultimatum date of July 30, 1997.
The trial court had the opportunity to consider the credibility and veracity of the witnesses as well the weight to be given the evidence. We cannot now reweigh the evidence in this case on appeal. Seasons Coal, 10 Ohio St.3d at 80. Since we find substantial, credible evidence in the record to support the trial court's decision, the first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED BY FAILING TO DETERMINE THE "CORRECT" PRICE FOR THE HOUSE AFTER IT FOUND THAT NEITHER SIDE'S PRICE WAS COMPLETELY ACCURATE.
In the second assignment of error, appellant argues the trial court erred by failing to determine the correct price for the house. In the first assignment of error, we affirmed the trial court's decision that Perry Bush unilaterally breached the contract. Accordingly, the trial court did not need to determine the correct purchase price for the house because Perry Bush was not entitled to damages. The Marinichs' damages were return of their down payment ($44,000) as well as $6,098 in improvements to the house paid for by the Marinichs. The second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED BY GRANTING PREJUDGMENT INTEREST TO THE MARINICHS.
In the third assignment of error, Perry Bush argues the trial court erred by granting the Marinichs prejudgment interest. See R.C. 1343.03(A) (allowing prejudgment interest for claims based in contract). We disagree. An award of prejudgment interest is appropriate where the amount of damages is readily ascertainable by mere computation. Finn v. Krumroy Constr. Co. (1990),68 Ohio App.3d 480, 490. The trial court has discretion in deciding whether to award prejudgment interest. Fitzpatrick v.Yeauger (July 9, 1998), Lawrence App. No. 97CA35, unreported. An award of prejudgment interest will be upheld absent an abuse of the trial court's discretion. Id. An abuse of discretion means the trial court's decision was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
The award of prejudgment interest in this case appropriately compensates the Marinichs for the time value of the funds held by Perry Bush. The amount of the down payment and additional costs paid by the Marinichs were easily calculated and did not require particularized findings by the trial court. Cf. Finn at 490 (amount of damages only ascertainable after judicial determination of the terms of the parties' contract). The third assignment of error is overruled.
The Marinichs raise two cross-assignments of error:
Cross-assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS/APPELLEES/CROSS-APPELLANTS WHEN IT FOUND NO VIOLATION OF OHIO'S CONSUMER SALES PRACTICES ACT.
Cross-assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF/APPELLEE/CROSS-APPELLANT WHEN IT ERRONEOUSLY CONCLUDED THAT A CONSUMER MUST PROVE A "DEFECT" IN A PRODUCT TO ESTABLISH A VIOLATION OF THE CONSUMER SALES PRACTICES ACT.
This court has affirmed the trial court's decision on the Marinichs' breach of contract claim and corresponding damage award. In this case, the breach of contract claim allowed recovery of their down payment and improvements to the house paid for by the Marinichs under contract theory and therefore the Marinichs received the remedy they requested. The Marinichs' cross-appeal clearly asks this court to affirm the trial court's judgment.
The Marinichs raised the Consumer Sales Practices Act in the cross-appeal claim as an alternative basis for affirming the trial court's decision if this court had concluded the trial court erred by finding Perry Bush breached the contract.[2] Since this court affirmed the trial court, it is not necessary for this court to find a violation of the Consumer Sales Practices Act. We specifically decline to express any opinion on whether a contract for the construction of a new house is actionable under the Consumer Sales Practices Act. The Marinichs' cross-assignments of error are overruled as moot.
Judgment affirmed.
YOUNG and VALEN, JJ., concur.
[1] 1. One of the disputes the trial court had to resolve is whether the $5,000 decorating allowance was spent in accordance with the Marinichs' wishes. However, as we discuss in the second assignment of error, the trial court was not required to determine the exact price for the house because evidence shows that Perry Bush breached the contract by requiring closing by July 30, 1997 at the price of $570,072.
[2] 2. By filing a notice of cross-appeal, the Marinichs theoretically could have sought a modification of the trial court's judgment. See App.R. 3.