JOURNAL ENTRY and OPINION
Appellant/mother Susan Marie Boik appeals from an order of the juvenile division of the common pleas court awarding permanent custody of her son to the appellee, Cuyahoga County Department of Children and Family Services ("CCDCFS"). In four assignments of error, appellant argues that:
 I. THE JUVENILE COURT ERRED IN TERMINATING APPELLANT'S PARENTAL RIGHTS BASED ON IMPROPERLY ADMITTED HEARSAY EVIDENCE.
 II. THE JUVENILE COURT'S DECISION TO TERMINATE APPELLANT'S PARENTAL RIGHTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE JUVENILE COURT ERRED IN RENDERING ITS DECISION PRIOR TO THE FILING OF THE GUARDIAN AD LITEM'S REPORT.
 IV. THE JUVENILE COURT'S FAILURE TO DETERMINE WHETHER THE WISHES OF DOMINIC COOPER CONFLICTED WITH HIS GUARDIAN AD LITEM'S RECOMMENDATION, AND SUBSEQUENT FAILURE TO APPOINT COUNSEL TO ZEALOUSLY REPRESENT DOMINIC, CONSTITUTED A VIOLATION OF THE DUE PROCESS RIGHTS OF DOMINIC AND APPELLANT.
For the following reasons, we find no error in the juvenile court's judgment and affirm its decision.
 FACTUAL AND PROCEDURAL BACKGROUND
This case commenced with the filing of a complaint by the CCDCFS on February 26, 1999 alleging that the subject child, Dominic Cooper, was abused and requesting that he be placed in the temporary custody of the CCDCFS. CCDCFS also requested an order of predispositional temporary custody. On March 3, 1999, the court found probable cause for an emergency order, placed the child in shelter care in the temporary custody of the CCDCFS, and appointed a guardian ad litem for the child. The court awarded the CCDCFS temporary custody of the child on June 23, 1999.
On December 22, 1999, the CCDCFS moved the court for permanent custody of the child. Appellant/mother filed a counter motion for permanent custody on April 26, 2000 but withdrew the motion at the permanent custody hearing held on September 12, 2000. At that hearing, the court heard the testimony of Detective Michael Doolin of the Brook Park Police Department, the child's therapist Lisa Collins, domestic violence counselor Patrick Nicolino, intake social worker Donnell Davis of the CCDCFS, psychologist Thomas Anuszkiewicz, social worker Lara Schwarz, appellant, and appellant's mother Deborah Strandloff.
This testimony showed that appellant married the child's biological father one month before the child was born. She claimed she married him because he threatened to take the child away from her. He had verbally and physically abused her for some three years before they were married; the abuse of her and of the child continued after the marriage. In one incident, he struck the child with a toy hockey stick. Appellant left her husband in September 1998.
In February 1999, appellant and the child moved in with Michael Bittel, a co-worker at the grocery store where appellant was employed. She said she noticed a bruise on the child's lower back and asked the child about it, and he told her he and Michael had been wrestling.
On February 24, 1999, appellant and Bittel took the child to Southwest General Hospital. His face and eye were bruised and swollen. Although appellant and Bittel originally reported that the child had fallen, Bittel later admitted to police that he had struck the child because the child had not listened to him. Examination of the child revealed other older injuries to the child's head, abdomen and arm, as well as the bruise on his back. Appellant told police that several of these injuries had occurred when the child was alone with Bittel. At the permanent custody hearing, counsel represented to the court that Bittel pled guilty to attempted child endangering.
Appellant denied that she had any contact with Bittel from February to September 1999; however, she became pregnant with his child in September 1999 and gave birth in June 2000. Although she also denied any continued relationship with him, Bittel was present at the hospital at the time of the birth.
A psychologist who counseled appellant opined that she had a dependent personality and a strong need for affection, which led her to tolerate abusive behavior. This personality trait put her at risk of further abusive relationships and would put a child in her care at risk as well. The child's therapist opined that the child should not be placed in the same household with Bittel because the child feared Bittel.
Following the hearing, the guardian ad litem submitted a written report dated September 18, 2000. On October 23, 2000, the court entered an order finding, by clear and convincing evidence, that the child cannot and should not be placed with either biological parent because of the mother's continuing relationship with the man who abused the child, her history of abusive relationships, and the father's abandonment of the child. The court further found that permanent custody was in the child's best interests because the child needed a safe and secure environment, which could not be achieved without a grant of permanent custody to CCDCFS. The child also needed specialized care by persons who could devote extensive time to his care and development and had interacted favorably with his foster parents and other care providers. The child feared the man who had abused him, but his mother had continued her relationship with the man and had a child with him. Therefore, the court awarded permanent custody to the CCDCFS.
 LAW AND ANALYSIS
In her first assignment of error, appellant urges that the court improperly relied upon hearsay evidence of the mother's continuing relationship with Michael Bittel. There was some hearsay testimony that Ms. Schwarz, the social worker assigned to this case, had informed various other witnesses that the mother continued to have a relationship with Bittel; however, the court did not improperly rely upon these hearsay statements. There was considerable direct and circumstantial evidence that the mother had a continuing relationship with Bittel. Appellant, herself, testified that she re-established a relationship with Bittel in September 1999. She became pregnant with Bittel's child, whom she named Michaelanna Bittel. The social worker testified that she spoke with appellant and Bittel at the hospital when the baby was born in June 2000, so it is clear that they continued to associate with one another. Based upon this evidence, the court could reject the mother's assertion that she had ceased to have a relationship with Bittel between the time that the child was placed in the temporary custody of the CCDCFS in February 1999 and September 1999, and again thereafter.
In fact, her testimony in response to the question "how can the court believe" that she would not have a relationship with Bittel belies her claim that she does not have a continuing relationship:
 When I'm working forty (40) or plus hours, I'm not with Michael. When I have counseling on Tues — or Wednesdays, Thursdays, I'm busy through Michael's schedule; I hardly see Michael. And when my son comes home, that's going to be my concentration with my son * * * * [Emphasis added.]
Appellant's claims that she is busy at times when she might see Michael, and particularly her claim that "I hardly see Michael," clearly imply that Michael is still involved in her life.
Appellant also complains that the hearsay statements of the social worker formed the factual basis for the opinions of CCDCFS's experts. Even though their original opinions may have been based in part on hearsay statements by the social worker that the appellant continued to have a relationship with Bittel, there was evidence in the record to support this factual assumption. Furthermore, if the court had found the factual basis for the experts' opinions was incorrect, the court could have rejected them.
Therefore, we overrule the first assignment of error.
In her second assignment of error, appellant urges that the court's decision to terminate her parental rights was against the manifest weight of the evidence. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
Appellant complains that there was no evidence to support the trial court's finding that the "mother knew that any further planning for the child would require no further contact between [the] mother and Michael Bittel." While it was not an explicit part of her case plan, the plan did require her to obtain her own housing. The fact that social workers and therapists asked her whether she had a continuing relationship with Bittel and, more importantly, the fact that she lied to social workers and therapists regarding her continued relationship with Bittel demonstrate that she knew she was expected to discontinue the relationship, not just their living arrangements. Frankly, it is a matter of common sense that the child should be spared any further contact with his abuser.
The court's finding that the child could not be placed with appellant within a reasonable time and should not be placed with her was also based on her history of abusive relationships both with the child's father and with Bittel and her emotional problem of dependency, which leads her to tolerate abusive behavior that would place her child at risk. There was competent, credible evidence in the record to support these findings. Accordingly, we overrule the second assignment of error.
Third, appellant argues the court erred by rendering its decision before the guardian ad litem filed his report. A report of a guardian adlitem should be filed either before or at the time of the hearing, not afterward. R.C. 2151.414(C). However, appellant waived any objection to the later submission of the report by failing to object before the trial court. In re Benoit (Nov. 2, 2000), Cuyahoga App. No. 76128, unreported. Appellant claims the report was not provided to the court, but the report is included in the record and was expressly relied upon by the court. The fact that it was not file-stamped could not have prejudiced appellant under these circumstances. Therefore, the third assignment of error is overruled.
Finally, appellant argues the court erred by failing to determine that the child's wishes conflicted with the recommendation of his guardian adlitem and by failing to appoint counsel to represent the child. Appellant claims Dominic indicated his desire to return to his mother in an interview with the court. The record of the court's interview with the child contains the following exchange:
 THE COURT: Good boy. Now where are you going to go now? You got to go back to preschool today? Where is Lara going to take you now? Back to your house where you're staying? Are you staying with two people or are there a lot of other children in the home?
DOMINIC: My mom's (inaudible) home.
THE COURT: Your mom is at the home?
DOMINIC: (Inaudible) I wish she (inaudible) do visit.
THE COURT: You're going to visit your mom? Okay.* * * *
We disagree with appellant's conclusion that this exchange reflects the child's desire to return to his mother's home. There is no evidence that the child's wishes conflicted with the recommendation of the guardian adlitem; therefore, the court was not required to appoint separate counsel to represent the child pursuant to R.C. 2151.352.[1] Cf. In re JanieM. v. Tyler P. (1999), 131 Ohio App.3d 637. Accordingly, we overrule the fourth assignment of error and affirm the juvenile court's judgment.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, A.J. and TERRENCE O'DONNELL, J. CONCUR.
[1] Given the child's age — barely five years — his wishes would have had little weight in the court's decision in any case; a child that young lacks the maturity to make a decision of this importance. See R.C. 2151.414(D)(2).