It is a fundamental principle of appellate review that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279. The majority correctly cites this standard of appellate review, then promptly ignores it so that it can substitute its own judgment for that of the court. I submit that a reading of the majority's own recitation of facts shows enough grounds for a difference of opinion on those facts that we must affirm the court's decision to terminate parental rights.
The evidence showed the children lived surrounded by trash and cockroaches. They were poorly-clothed (some of them did not own shoes; others were inappropriately dressed for the weather); had no refrigerator or stove in the apartment; and were forced to sleep on mattresses suspended by milk crates. Mother left a ten-year-old in charge of several much younger children while she left the house. The exact time she was gone on the day that prompted these custody proceedings is open to dispute, but mother was gone long enough that neighbors called the police because the poorly-clothed children were wandering in the street. A police officer responding to the call took one look at the premises and called the KIDS Hotline to report the conditions as constituting neglect.
The majority questions much of this evidence, disagreeing, for example, whether cockroaches found in the apartment were dead or alive, whether mother neglected the children, and whether mother kept food in the apartment. But a disagreement on the state of the evidence merely brings into play the credibility of the witnesses. It was the court's prerogative to find that the lack of supervision and the condition of the house, among many other things, constituted neglect. This is so because the court was in the best position to hear the evidence, view the witnesses and draw conclusions. See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
The majority concludes that mother kept no food in the house because she took her meals with another family who lived in the other half of the duplex. That fact was open to dispute, as a social worker testified that she spoke with this neighbor and the neighbor just looked at me, and didn't respond at all. The neighbor's lack of response suggested to the social worker that none of the food in that home belonged to mother.
The existence of cockroach infestation in the apartment strikes me as a silly point for the majority. One witness said there were flying cockroaches in the apartment, but mother's sister claimed those cockroaches were dead because the landlord had sprayed the apartment only three days earlier. Even if the cockroaches were dead at the time the police were summoned to the apartment, it means they were once alive in the apartment and signified the existence of a larger health problem for the children.
The majority also claims the conditions which caused the removal of the children were temporary in nature, brought about by a family crisis involving the hospitalization of one of the boys due to his asthma. Mother claimed she had been spending time at the hospital with this boy at the temporary expense of the other children. But the court could reasonably conclude that mother's attention to other matters is a classic example of neglect. While she tended to one sick child, she let the others run around unattended, poorly fed and ill-clothed. The conditions existing at the time the county intervened were so horrid that the court could reasonably find that they existed apart from mother's attention to other family matters.
As if these points of disagreement were not enough to show that we have no business recharacterizing the evidence to suit our own purposes, the majority's decision is at complete odds with this court's previous decision in In re Hauserman (Feb. 3, 2000), Cuyahoga App. No. 75831, unreported. The first Hauserman decision involved the exact same set of facts arising in this case relating to one Hauserman sibling who was removed from the house at the same time as the children involved in this case. Our opinion noted [t]he children lived in a filthy roach-infested house with no food and barely any clothing. The two youngest children, ages two and three, were also seen roaming the street unattended. These facts, among others, justified a termination of parental rights for that Hauserman sibling.
We may take judicial notice of our prior decisions in order to insure uniformity and consistency. See Hauschild v. City of Cleveland (1958),105 Ohio App. 444. The majority's failure to recognize our previous case results in one set of facts with two incompatable results. It is hard to imagine a more arbitrary result than that reached here.
A final word. We took this case on reconsideration because the appellant filed a motion for clarification of the majority's original order vacating the permanent custody order and remanding for further proceedings. Of course, the majority also found that the children were not neglected, so any basis for holding the children disappeared. The original language remanding this case for further proceedings was clearly erroneous since there were no further proceedings to be had. The neglect finding was the predicate order for removing the children from the mother's home. Without a finding of neglect, the county simply has no authority to continue to hold these children in foster care. R.C.2151.35(A)(1) states that if the court does not find the child to be * * * neglected * * *, it shall order that the complaint be dismissed and that the child be discharged from any detention or restriction theretofore ordered. Likewise, there is absolutely no statutory authority for the majority's order that the court implement a reunification plan. Although I obviously disagree with the majority's result in this case, the only legal disposition of this case is to dismiss the complaint and order the children returned to the mother forthwith. The majority's reluctance to concede this point speaks volumes about its result.
In the end, the majority's willing advocacy for the mother is nothing more than a reversal on the manifest weight of the evidence which substitutes the majority's judgment for that of the trial judge. Because I would defer to the fact finder's discretion to assess the credibility of witnesses and draw conclusions from the evidence, I must respectfully dissent.