OPINION
In November 1992, FM, Inc. ("FM") entered into a contract with Tri-State Concrete ("Tri-State") for the installation of concrete at a restaurant FM was planning to open in Williamsburg, Ohio. Tri-State specifically agreed to pave the restaurant's parking area and to construct a concrete patio at a price of $54,234.17. Tri-State then entered into a subcontract with Plainville Concrete Services, Inc. ("Plainville") for the purchase of the concrete necessary to complete the work. A dispute subsequently arose between FM and Tri-State concerning the quality of the work performed by Tri-State in the patio area of the restaurant.
Tri-State eventually agreed to accept $45,093 as payment in full in exchange for FM's acceptance of the patio concrete work. Tri-State deposited all of the funds it received from FM in its accounts, but did not pay Plainville approximately $11,000 for the concrete it had used to complete the FM construction project. Plainville then filed a mechanic's lien against FM's property pursuant to R.C. Chapter 1311.
In June 1993, FM discovered latent defects in the paving work Tri-State had performed in the parking lot area of the restaurant which had caused cracking. FM contacted Tri-State and notified it of the problem. Tri-State did not repave the parking lot or take any other action to cure the defect.
On April 12, 1994, Plainville brought suit against FM to foreclose on the mechanic's lien. FM filed a third-party complaint against Tri-State and one of its owners, David Dillingham,[1] for breach of contract and slander of title. TriState counterclaimed alleging that FM had breached the contract by failing to pay $9,141.17 of the original price. FM eventually settled Plainville's claim by agreeing to pay the $11,000 outstanding balance due on the concrete bill. Plainville then assigned FM an $11,000 judgment it had obtained against Dillingham. A bench trial was held in the Clermont County Court of Common Pleas on November 17, 1995.
The trial court found that Tri-State and Dillingham had breached the contract by paving the parking lot in a defective and unworkmanlike manner and by failing to pay Plainville for the concrete used to pave the parking lot and construct the patio. The trial court also found that FM was not liable for the additional $9,141.17 due under the original contract because Tri-State and Dillingham had agreed to discharge their claims for this amount in exchange for FM's acceptance of the defective patio. The trial court awarded FM $19,343.75 in damages. Tri-State and Dillingham now appeal setting forth the following assignments of error:
Assignment of Error No. 1:
 TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY GRANTING DAMAGES WITH CONFLICTING TESTIMONY OF EXPERT WITNESSES.
Assignment of Error No. 2:
 TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY GRANTING DAMAGES WHERE NO CLEAR EVIDENCE OF DISPUTE WAS DETERMINED.
Assignment of Error No. 3:
 TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY GRANTING DAMAGES OF $11,000.00 OVER THE REQUEST OF DEFENDANT-APPELLANT'S ATTORNEYS REQUEST THAT SAID EXECUTION OF JUDGEMENT [sic] ALREADY EXISTED.
All three assignments of error raised by Tri-State and Dillingham essentially argue that the trial court's judgment awarding FM $19,343.75 in damages is contrary to the manifest weight of the evidence. An appellate court's function when reviewing the weight of the evidence in a civil case is to examine all of the evidence offered by the parties at trial and to then determine whether there is "some competent credible evidence going to all essential elements of the case." Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80; C.E. Morris v. Foley Construction Co. (1978), 54 Ohio St.2d 279, 280.
Our review of the record indicates that FM presented ample evidence at trial that Tri-State and Dillingham paved the parking lot in a defective and unworkmanlike manner and that the cost of remedying the defect was $6,000. The record also contains substantial, credible evidence which would allow the trial court to conclude that Tri-State and Dillingham failed to pay Plainville for the concrete used in the FM construction project and that FM was forced to expend approximately $13,343.75 to remove the mechanic's lien which Plainville had rightfully filed against FM's property.
Likewise, all of the evidence presented at trial indicates that Tri-State and Dillingham were not entitled to recover the $9,141.17 balance due on the original contract because their claims were extinguished when Tri-State agreed to accept $45,093 as payment in full for the FM construction project in exchange for FM's acceptance of the defective concrete work in the patio area of the restaurant. Accordingly, the trial court's judgment awarding FM $19,343.75 is not contrary to the manifest weight of the evidence. The first, second, and third assignments of error are overruled. The judgment of the trial court is hereby affirmed.
WALSH, P.J., and YOUNG, J., concur.
[1] Tri-State is a partnership in which Dillingham is one of the partners.