Defendant-appellant, Richard J. Corman, appeals the decision of the Madison County Court of Common Pleas to award plaintiff-appellee, Dale A. Collins, $9,279.69 as damages for net unpaid salary. We affirm the decision of the trial court.
Appellee is a former employee of appellant. Appellant's business is train derailment services. Ironically, appellee left appellant's business in 1983 over a wage dispute, but was rehired in 1988. In 1988, appellee was hired as "assistant superintendent at the Columbus derailment division" and his work included "clean[ing] up [train] wrecks," "maintain the shop people," customer relations and sales. Appellee's salary included three separate hourly rates depending on the type of work. In addition, appellee received one-half of one percent of the gross revenue of the Columbus division.
In 1989, appellee was promoted to superintendent and his "commission" was raised to one percent of gross sales of the division. In 1990, appellee's title became supervisor. At that point, appellee's direct supervisor became a new general manager, Tom Hammerstone. Appellee negotiated his salary directly with Hammerstone.
On April 7, 1994, appellee was faced with a derailment in Verona, Kentucky. The derailment required the work of two divisions, so appellee called the Gary, Indiana division to help the Columbus division. Appellee chose the Gary, Indiana division because his previous boss, Gary Miller, was in charge and had considerable experience. Richard Corman arrived at the scene and asked appellee why he had not called the closer division in Nicholasville. Appellee was "aggravated" by the criticism, and told Corman that he [appellee] should receive more compensation. Corman agreed to raise appellee's "commission" to two percent of the gross revenue of the Columbus division. Appellee received some, but not all, of his "commissions."
In November 1995, Hammerstone had a meeting with appellee about appellee supervising derailment operations at three, and eventually four, divisions with the new title of "regional manager." Appellee described the agreement as follows:
 Well, it was a base salary for a 40 hour week was 50,000 a year and I was hourly compensated straight time on my wrecking and overtime wreck wages with a floor at $100,000 at the end of the year minimum. The reason [sic] he didn't want to lock me in.
Appellee elaborated that under the agreement his total salary would be at least $100,000 with a possibility of a higher salary depending on the "wrecking" and "overtime wreck" wages.
In 1996, appellee expressed his concern to Hammerstone that because he was "spending a lot of time" with the newer divisions, his overtime hours were less because he was working less derailments. Appellee indicated that he should be paid a "flat salary." Instead, Hammerstone told appellee an adjustment would be made at the end of the year. In essence, appellee would receive a "bonus" to raise his yearly salary to $100,000 if his base salary of $50,000 plus his "wreck" and "overtime wrecking" wages did not reach $100,000. In December 1996, Hammerstone died.
In January 1997, appellee had a brief conversation with Corman in which Corman indicated he was "not happy" with the derailment divisions and appellee would not be receiving his "bonus." Corman testified this was his only conversation with appellee regarding his salary and he was not aware of any prior agreement for a "bonus." Corman indicated that day-to-day management of the business had been delegated to Hammerstone until his death in December 1996.
Unable to reach an amicable agreement with appellant regarding his "bonus," appellee filed suit alleging breach of an oral employment agreement. After a bench trial, the court concluded that the parties had agreed appellee would receive a minimum total salary of $100,000 in 1996. However, appellant was owed $1,134.12 in reimbursement. Therefore, since appellant had received $89,596.19 in salary, appellee was entitled to a net damage award of $9,279.69. From this decision, appellant filed a timely notice of appeal and presents one assignment of error for our review:
 The Trial Court's Judgment is Against the Manifest Weight of The Evidence Since There Exists No Competent and Credible Evidence To Support the Judgment.
Upon review of the trial record, appellee testified he was entitled to a minimum salary of $100,000, which included a base forty-hour rate of $50,000 and minimum additional hourly "wreck" and "overtime wrecking" pay to reach a total of $100,000. The trial court concluded that appellant only received $89,596.19 in salary for 1995. However, appellant was entitled to $1,134.12 in reimbursement. Therefore, appellee was awarded net damages of $9,279.69. Appellee negotiated this arrangement with Corman's general manager, Tom Hammerstone, who is deceased. Corman testified he was not aware of any agreement to pay appellee a minimum total salary of $100,000 for 1996.
The trial court had to judge the credibility and veracity of the witnesses. It is patently obvious the trial court believed appellee's testimony and rendered its decision accordingly. Since competent, credible evidence supports the trial court's decision, this court cannot reverse that ruling as being against the manifest weight of the evidence. Seasons CoalCompany, Inc. v. City of Cleveland (1984), 10 Ohio St.3d 77,80. Thus, the assignment of error is not well-taken.
Judgment affirmed.
KOEHLER and YOUNG, JJ., concur.