OPINION
Michael D. Spurling appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which awarded Barbara Jean Spurling $16,767.94, plus interest, pursuant to the parties' separation agreement.
Before discussing this case, we note that we have sua sponte
caused the two transcripts, Mr. Spurling's deposition, and the exhibits that were admitted during the hearing to be made part of the appellate record, and we have carefully reviewed these documents.
The record reveals as follows. Michael and Barbara Jean Spurling were married on December 16, 1967. No children were born as issue of their marriage.
On February 19, 1993, the Spurlings filed a petition for dissolution of marriage, stating that they had executed a separation agreement. Although their petition stated that the separation agreement was attached, there is no copy of the separation agreement in the record. The parties agree on the pertinent language of the separation agreement, however, so the absence of it is not problematic. The trial court granted the Spurlings' petition for dissolution on April 1, 1993 and incorporated the separation agreement into its judgment entry. The separation agreement provided that Mr. and Mrs. Spurling would continue to live together until their marital home was sold, at which time the parties would equally split the proceeds or losses from the sale. Apparently, Mr. and Mrs. Spurling agreed to continue living together so that they could try to avoid selling the marital home at a loss.
The marital home was listed with a realtor in April 1993, and Mr. and Mrs. Spurling continued to live in it together. In October 1993, Mrs. Spurling quitclaimed her interest in the marital home to Mr. Spurling so that he could refinance the marital home, in his name alone, to obtain lower monthly payments. Mrs. Spurling did not consult an attorney before quitclaiming her interest and did not realize the legal ramifications of her actions. Around April 1995, two offers were made on the marital home, but they were rejected because one or both of the parties thought they were too low.
In June 1995, Mr. Spurling filed a motion asking the trial court to allow him to pay Mrs. Spurling "her portion of the net equity in the [marital] home based upon the average of [the] two prior [rejected] offers" and to order Mrs. Spurling to vacate the marital home. The trial court ordered the parties to mediation regarding Mr. Spurling's motion. In August 1995, Mr. Spurling remarried, and his new wife and her three daughters moved into the marital home. At some point, Mrs. Spurling's parents moved into the mother-in-law suite of the marital home.
On September 15, 1995, the trial court accepted an agreed entry from the parties and adopted the mediation agreement that they had reached. Pursuant to the mediation agreement, Mrs. Spurling was to vacate the marital home and Mr. Spurling was to give Mrs. Spurling $5,000, which was later to be deducted from Mrs. Spurling's half of the proceeds from the sale of the marital home.
On September 15, 1997, Mr. Spurling sold the marital home without informing Mrs. Spurling of the sale. Mrs. Spurling learned of the sale and filed a motion asking the trial court to hold Mr. Spurling in contempt for failing to pay her half of the proceeds from the sale. A hearing on the motion took place on February 6 and March 16, 1998. Mrs. Spurling and Melissa Harris, Mr. Spurling's step-daughter by second marriage, testified at the hearing. At the time of the hearing, Mr. Spurling lived in Arizona and his poor health prevented him from traveling to Ohio. Thus, the parties agreed to allow Mr. Spurling to testify via deposition.
The testimonies of Mr. and Mrs. Spurling agreed on the following. The separation agreement stated that Mrs. Spurling was to receive $6,000 from Mr. Spurling's half of the proceeds of the sale of the marital home to compensate her for the retirement benefits that Mr. Spurling had earned while they had been married. Mr. and Mrs. Spurling had a first mortgage on the marital home. They also had a second mortgage ("home equity loan"), which was used to finance the purchases of a Chevy S-10 pickup truck for Mrs. Spurling and a Chevy Z-34 for Mr. Spurling. The separation agreement required Mrs. Spurling to assume the debt on her truck and to make payments on it, but she never made these payments. The debt on the truck was paid off when the marital home was sold.
The separation agreement stated that Mr. and Mrs. Spurling were to continue paying household bills as they had prior to the dissolution. One of the bills that Mrs. Spurling had routinely paid was the property tax. Although she had paid the property tax in 1993 and 1994, she failed to pay any property tax for the nine months in 1995 that she had lived in the marital home.
The following facts were disputed.
Mr. Spurling testified that on September 5, 1995, Mrs. Spurling approached him and handed him a document titled "Bill of Sale." She told him that she and her attorney had signed the document, which stated that, in exchange for the $5,000 which Mr. Spurling had agreed to pay to Mrs. Spurling in the mediation agreement, Mrs. Spurling "would release [Mr. Spurling] of any obligations of having to pay her any more money when [the marital home] sold." He "asked her why she was doing this," and she told him that she had found a new house to move into, but that her bank would not give her a loan for the house because it was worried that the former marital home would sell at a loss, that she would have to pay half of that loss pursuant to the separation agreement, and that she would then be unable to make her payments on her new house. She also told him that her attorney would file the document with the court. Mr. Spurling then handed Mrs. Spurling a check for $5,000 which he had previously written on August 24, 1995. The check stated, "HOUSE [-] TO BE SUB[TRACTED] ON SALE" in the memo section. He had written the check pursuant to the mediation agreement which provided that the $5,000 would be subtracted from Mrs. Spurling's half of the proceeds from the sale of the marital home. He did not cross those words out before handing the check to her because he was "in shock." He did not give Mrs. Spurling a 1099 or any other type of tax document following the "sale" because he had contacted the IRS and had been told that the house had been his sole property since Mrs. Spurling had quitclaimed her interest in it to him and that, because he was not a real estate agent or title company, he did not have to file any type of tax document.
Mr. Spurling also testified that he had made numerous improvements to the marital home so that it could be sold. He repainted the entire inside and outside of the marital home, replaced damaged items in the mother-in-law suite, landscaped the area, sowed grass, wallpapered, and hung valances. He testified that Mrs. Spurling had verbally agreed to pay for the materials for these improvements and he had agreed to furnish the labor.
Mrs. Spurling testified as follows. Although her bank had been concerned about the provision in the separation agreement that made her liable for half of a potential loss on the marital home, she had not approached Mr. Spurling about the bank's concern. She did give the bank other documentation to relieve those concerns, but she was not sure what she had given the bank and she no longer had such documentation. She did not give Mr. Spurling the bill of sale, and although it appeared to have her signature, she never signed the document and the signature was a "forgery." Further, Mr. Spurling had been involved in another court case involving a forged document and he had lost that case. She stated that she had not been aware of whether any improvements had been made to the marital home after she had moved into her new house.
It was established in the record that Mrs. Spurling's attorney never signed the bill of sale, although the document did contain a signature of his name.
The magistrate ruled that the proceeds from the sale of the marital home had been $45,000, and thus each party should have started with $22,500 in proceeds. The magistrate concluded that the evidence regarding the bill of sale was not sufficient to prove that the $5,000 given to Mrs. Spurling by Mr. Spurling had released him from the obligation to pay her half of the sale proceeds from the marital home. The magistrate did, however, subtract the $5,000 that Mr. Spurling had paid to Mrs. Spurling from Mrs. Spurling's half of the proceeds. The magistrate also subtracted $7,553, the amount of the truck debt that Mrs. Spurling had failed to pay, from her half of the proceeds. The magistrate further granted Mrs. Spurling $6,000 from Mr. Spurling's half of the proceeds to account for the retirement benefits that Mr. Spurling had earned during the marriage. The magistrate thus concluded that Mr. Spurling owed Mrs. Spurling $15,947.
Mr. Spurling filed objections to the magistrate's decision. On December 29, 1998, the trial court ruled on those objections and concluded that the bill of sale was valid and that it had released Mr. Spurling from his obligation to pay Mrs. Spurling half of the proceeds from the sale of the marital home. On April 15, 1999, the trial court vacated its December 29, 1998 decision, however, because Mrs. Spurling's attorney had never received Mr. Spurling's objections and thus had been unable to respond to them. On April 28, 1999, Mrs. Spurling filed her response to the objections.
On July 20, 1999, the trial court ruled again on the objections. The trial court found that the sale proceeds from the marital home had totaled $40,677.78. The court decided to adopt the magistrate's finding that the bill of sale lacked credibility. The court did, however, subtract $5,000 from Mrs. Spurling's half of the proceeds to account for the money that Mr. Spurling had already paid to her. The trial court found that $40,677.78 had been the amount of the sale proceeds after the home equity loan, which included the truck loan, had been paid off at the closing of the sale of the marital home. The trial court found that because the separation agreement had stated that any remaining debt on the home equity loan at the time of the sale was to be paid out of the sale proceeds before the proceeds were divided between Mr. and Mrs. Spurling, the amount of the truck debt should not have been subtracted from Mrs. Spurling's half of the proceeds. The trial court did subtract $6,000 from Mr. Spurling's half of the proceeds to account for the retirement benefits he had earned during the marriage. The court also found that the costs of the materials for Mr. Spurling's improvements to the home had totaled $1,341.90 and concluded that half of that amount should be subtracted from Mrs. Spurling's half of the proceeds. The trial court also concluded that Mrs. Spurling had been responsible for $3,900 in property taxes for the nine months of 1995 that she had lived in the marital home and subtracted that amount from her half of the proceeds. The trial court thus ordered Mr. Spurling to pay Mrs. Spurling $16,767.94 plus ten percent interest per year from May 20, 1998, the date of the magistrate's decision. Mr. Spurling now appeals the trial court's July 20, 1999 ruling.
Mr. Spurling advances one assignment of error on appeal.
 THE COURT ERRED TO THE PREJUDICE OF APPELLANT IN THAT ITS DETERMINATION ON THE QUESTION OF THE ENFORCEABILITY OF A BILL OF SALE PREPARED AND SIGNED BY APPELLEE WHEN THERE WAS A RISK OF LOSS TO HER, BUT THEN RECANTED WHEN SHE REALIZED THERE WAS MONEY TO BE HAD, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Mr. Spurling argues that the trial court erred in concluding that the bill of sale lacked credibility. He further argues that even if the bill of sale is not enforceable, the trial court erred in determining the amount of money that he owed to Mrs. Spurling.
The trial judge or magistrate "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co., Inc.v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273, 1276. Thus, if the trial court's judgment is supported by some competent, credible evidence, we will not reverse the judgment as being against the manifest weight of the evidence. Id. (quotation omitted).
Although the document was referred to as a "Bill of Sale" throughout the hearing, it was actually titled "BILL OF SELL [sic] OF PROPERTY[.]" After listing the address of the marital home, this document stated as follows in capital letters:
 I Barbara Jean Spurling agree to sell my half of the residence at 2281 Vienna Parkway, Dayton, Ohio 45459, to Michael D. Spurling, for the sum of $5,000.00. I release Mr. Spurling of any obligation to pay me any more monies when or if he ever sells the property at 2281 Vienna Parkway.
The document had a line with a signature reading "Barbara Jean Spurling" and a line with a signature reading "Michael R. Eckhart[,]" the name of Mrs. Spurling's attorney. The document was dated August 22, 1995.
Mr. Spurling argues that he "offered a convincing case in support of the validity of the Bill of Sale." He states that the signature of Barbara Jean Spurling on the bill of sale looks "exactly like her signature on other documents." He further points out that he produced a witness, Melissa Harris, who testified at the hearing that Mrs. Spurling had presented the bill of sale to Mr. Spurling.
Melissa Harris testified as follows regarding the bill of sale:
 When I was present and [Mrs. Spurling] came in, I'm assuming she had this [document] in her hand. She had papers, whatever, and I stepped out of the room because it was her and [Mr. Spurling]. And what I heard as I was leaving, she had brought this paper for — she was going to get a check from [Mr. Spurling] for $5,000, and they were going to call it even, so she could * * * get a loan on her new house from the bank.
Thus, her testimony reveals that she did not directly see the bill of sale and she was not actually present for the conversation between Mr. and Mrs. Spurling.
Mr. Spurling testified, however, that Harris had been present and that she had seen the document because he had "passed it around" to Harris and the other individuals that he claimed had been present. He stated that Harris and others had been "standing in a group around [Mrs. Spurling]" when he had given Mrs. Spurling the $5,000 check. Thus, Mr. Spurling's testimony was not consistent with Harris's testimony.
Further, there is evidence in the record to support the trial court's decision to adopt the magistrate's conclusion that the bill of sale lacked credibility. The mediation agreement, which Mr. and Mrs. Spurling reached only three weeks prior to the date that Mr. Spurling claims Mrs. Spurling approached him with the bill of sale, stated that Mr. and Mrs. Spurling had agreed to wait for the sale of the marital home to disburse the equity and that Mr. Spurling would give Mrs. Spurling $5,000 which was to be later deducted from her half of the proceeds from the sale of the marital home. The $5,000 check that Mr. Spurling gave to Mrs. Spurling had a memo which indicated that the sum was to be later deducted from Mrs. Spurling's half of the proceeds. Although the document was supposedly created to alleviate the bank's fears that Mrs. Spurling would have to pay half of the losses on the marital home, the language of the document stated nothing about her responsibility regarding potential losses on the marital home, but rather only released Mr. Spurling from giving her half of the proceeds from the sale. Mrs. Spurling testified that the document did not contain her signature and that Mr. Spurling had lost another court case involving a forgery. Further, it was established in the record that although the bill of sale appeared to contain the signature of Mrs. Spurling's attorney, her attorney had not signed it. Because the trial court's conclusion that the bill of sale lacked credibility is supported by competent, credible evidence in the record, we will not reverse it as being against the manifest weight of the evidence.
Mr. Spurling further argues that the trial court erred in determining the amount of money that he owed to Mrs. Spurling.
Both parties agree that $6,000 should be paid to Mrs. Spurling from Mr. Spurling's half of the proceeds to account for the retirement benefits that he had earned during the marriage. Both parties also agree that $5,000 should be paid to Mr. Spurling from Mrs. Spurling's half of the proceeds to account for the $5,000 check that Mr. Spurling had written to Mrs. Spurling pursuant to the mediation agreement.
The separation agreement stated that, until the marital home was sold, both parties were to continue paying the household bills as they had in the past. Prior to the dissolution, Mrs. Spurling had routinely paid the property taxes. Mr. Spurling claims that Mrs. Spurling should have to pay property taxes for the nine months of 1995 that she lived in the house. Mrs. Spurling does not dispute that she should have to pay those taxes, but the amount of those taxes is disputed.
There is no documentation in the record regarding the total of the 1995 property taxes. The trial court found that the property taxes properly payable by Mrs. Spurling were $3,900. On appeal, Mr. Spurling asserts that the proper figure is $3,339. Based upon our review of the evidence as to the property taxes, $3,339 is much closer to 75% of the 1995 property taxes than was the trial court's figure. In view of the fact that Mr. Spurling is the beneficiary of the amount of the property taxes deducted from Mrs. Spurling's half of the proceeds from the sale of the marital home, we will accept the $3,339, as advanced in Mr. Spurling's brief, as the appropriate amount of the property taxes owed by Mrs. Spurling.
Mr. Spurling claims that, pursuant to the separation agreement, Mrs. Spurling should have to pay for the debt on her truck.
Paragraph one of the separation agreement indicated that Mrs. Spurling was to receive the truck and was to assume the truck loan of $7,553. The truck loan was part of the home equity loan. The separation agreement stated that any remaining debt on the home equity loan at the time of the sale of the marital home would be paid off with the proceeds from the sale. The second paragraph of the separation agreement stated that, until the marital home was sold, each party would continue paying household bills as he or she had in the past.
The magistrate found that, pursuant to paragraph one of the separation agreement, Mrs. Spurling was responsible for the truck payment, which totaled $7,553, and thus, that $7,553 should be deducted from her half of the sale proceeds. The trial court interpreted the separation agreement differently. The court found that, pursuant to paragraph two of the separation agreement, the parties were to equally divide the sale proceeds after the home equity loan, which included the truck loan, was paid off. Based on this paragraph, the court concluded that "[i]t is appropriate, therefore, to begin by taking one-half of the balance of the [sale] proceeds * * * and not to deduct the pay-off from [Mrs. Spurling's truck] loan a second time."
After the separation agreement was made, Mrs. Spurling should have started making the monthly truck payments on her truck. She did not, however, make any of these payments. Mr. Spurling testified that he had made some of the payments, but that he had not made all of the payments and that the truck loan was not paid off until the marital home was sold. The truck loan was signed on April 14, 1991 and was for five years. Thus, had Mrs. Spurling made the monthly payments, as the separation agreement required her to do, the truck loan would have been paid off before the marital home was sold in 1997, and none of the proceeds from the marital home would have had to be used to pay off the truck loan. Accordingly, we believe that the trial court erred when it concluded that the truck payment should not be deducted from Mrs. Spurling's half of the sale proceeds. The magistrate concluded that the truck loan debt was $7,553, and the record supports that figure as the amount of the truck debt at the time of the separation agreement. Thus, $7,553 should be deducted from Mrs. Spurling's half of the sale proceeds.
Mrs. Spurling claims that she should not have to pay for the truck loan because paragraph two of the separation agreement stated that the parties were to continue paying household bills as they had in the past, and that prior to the separation agreement, Mr. Spurling had made the monthly payments on the home equity loan, which included the truck debt. She argues that, pursuant to paragraph two, Mr. Spurling should have continued paying the truck loan as he had in the past.
Paragraph one of the separation agreement explicitly stated that Mrs. Spurling was to take possession of the truck and to assume the loan of $7,553 on the truck. This specific language regarding the truck loan trumped the more general language regarding household bills. Moreover, at trial, Mrs. Spurling admitted that the separation agreement had required her to make payments on the truck loan. Her argument is not persuasive.
Mr. Spurling argues that Mrs. Spurling should have to pay "at least" half of the costs of the improvements that he made to the marital home before it was sold.
The trial court concluded that equity required that Mrs. Spurling pay half of the costs of the materials for the improvements. The court credited Mr. Spurling's list of these costs, but it appears that the trial court inadvertently used the last number on the list, $1,341.90, as the total of the costs, rather than adding up all of the costs on the list.
The trial court acted reasonably in determining that Mrs. Spurling was required to pay half of the costs of the materials. See Doan v. Doan (Oct. 2, 1997), Hamilton App. No. C-960932, unreported. According to the list, the total amount of the costs of the materials was $4,196.56. Upon our examination of the record, we cannot determine, for certain, whether the trial court intended to find that the materials had cost $1,341.90, or whether it inadvertently used the last number on the list, believing that number to be the total. Rather than our attempting to make the factual determination as to the costs of the materials, we remand this case to the trial court so that it can make that determination. We urge the parties, however, upon receipt of this decision, to agree to what the total costs were, rather than to expend further client funds and judicial resources on this matter, so that upon remand, correction of the final judgment can be done expeditiously without the necessity of an evidentiary hearing on the matter.
The assignment of error is sustained in part and overruled in part.
The judgment of the trial court will be affirmed in part, reversed in part, and remanded for a determination of the cost of the materials used in the improvements to the marital home. For a final calculation, the trial court should begin with Mrs. Spurling's half of the sale proceeds, $20,333.89; add $6,000 for Mr. Spurling's retirement benefits; subtract $5,000 for the amount that Mr. Spurling already paid to Mrs. Spurling; subtract $3,339 for the property taxes; subtract $7,553 for the truck loan; and subtract half of the amount of the costs of the materials used in the marital home improvements. The final amount should also include ten percent interest per year from the date of the filing of the magistrate's decision and permanent order of May 20, 1998.
GRADY, P.J. and BROGAN, J., concur.