OPINION
Fifth Third Bank of Western Ohio (hereinafter "Fifth Third") is appealing the judgment of the Montgomery County Common Pleas Court, which set an appraised value for real property in which both Fifth Third Bank and the United States Small Business Administration (hereinafter "SBA") had security interests and found that the business, which was in receivership, was sold in its entirety rather than piecemeal, thereby making the court's appraised value of the property important in distribution of the funds from the sale.
On November 7, 2000, Fifth Third filed a receivership action against B.B.K.M., Inc. and M.K.B.B., Limited Liability Co. (hereinafter "Business"). The trial court entered a monetary judgment in favor of Fifth Third and ordered the Business into receivership, appointing Mr. Leonard Eppell as receiver. When trying to obtain financing for its business operations, the Business had given the first and third security interests in its real property, equipment, and personal property to Fifth Third. SBA held the second security interests in the Business's personal property and real estate. Fifth Third was secured by the first $412,500 of the sale value of the real property, and SBA was secured by the next $340,000 of the sale value of the real property.
Mr. Eppell initially attempted to improve the Business's profitability, and, when that failed, he began to solicit a buyer for the business. Finally, Mr. Eppell proposed to auction the assets of the Business, and the trial court approved. The terms of the auction provided for the bidding to begin on the business as a whole and then on each of its five separate elements — the real estate, the equipment, the inventory, the accounts receivables, and the general intangibles. The actual sale was to be carried out in a manner that generated the greatest total amount of money for the creditors. Additionally, the trial court had ordered that the initial offeror, JBM Envelope Company (hereinafter "JBM"), could be the successful bidder by merely matching the highest bid or bids for the assets.
Since the parties could not agree to the purchase price of the real estate, a hearing was held on March 29, 2001 to determine how the funds from the sale would be allocated to the real property if the assets of the Business were sold in their entirety. Mr. Eppell testified that he had not received an offer for the real property in excess of $300,000. Additionally, Fifth Third called Mr. Douglas Harnish, President and Chief Operating Officer of Gem Real Estate Group, to testify. Mr. Harnish appraised the value of the real estate as between $330,000 and $340,000. The SBA called Mr. Mark Middleton, a real estate appraiser with Gutman 
Middleton, Inc., who appraised the real estate at $750,000. Additionally, Mr. Harnish testified that the real property had been sold in 1999 for $875,000. The court determined that, if the assets of the Business were sold pursuant to an entireties bid, then $750,000 of the purchase price would be allocated to the purchase of the real estate. Fifth Third filed a timely appeal of this judgment, which was given case number 18848.
On March 30, 2001, an auction was held on the assets of the Business. The initial bid received was an offer of $2,500,000 for the assets in their entirety. A second offer was made for $2,600,000 for the assets in their entirety. Fifth Third then bid on the assets in a piecemeal fashion with $1,400,000 for the equipment, $1,000,000 for the accounts receivable, $25,000 for the inventory, $25,000 for the general intangibles and $300,000 for the real property. The total amount of Fifth Third's bid was $2,750,000. JBM matched Fifth Third's bid, and all of the assets of the Business were sold to JBM.
On May 2, 2001, the trial court issued an order that approved the sale of the assets, but a dispute arose between the parties as to whether the assets had been sold in their entirety or piecemeal. The trial court recognized this dispute and therefore had Mr. Eppell hold $350,000 from the proceeds of the sale pending a judgment from the trial court regarding whether the assets were sold in their entirety or in a piecemeal fashion.
A hearing on this issue was held on August 31, 2001. Fifth Third argued at the hearing that, because the final bid was that of JBM matching Fifth Third's piecemeal bid, then the assets were sold to JBM in a piecemeal fashion. SBA argued that the asserts were sold in their entirety as the only bidder for the individual parts was Fifth Third. Additionally, SBA pointed to the statement of JBM's counsel during the hearing after the auction that "JBM bid two point seventy five for the whole business." On October 2, 2001, the trial court issued a decision and order finding in favor of SBA that the assets were sold in an entirety bid. Fifth Third filed a notice of appeal from this decision also and was assigned case number 19075. Upon a motion by Fifth Third, the two appeals were consolidated into this single appeal.
Fifth Third asserts the following two assignments of error:
 1. THE TRIAL COURT'S CONCLUSION AS TO THE VALUE OF THE REAL ESTATE IS INCONSISTENT WITH THE WEIGHT OF THE EVIDENCE PRESENTED AT THE HEARING.
 2. THE TRIAL COURT ABUSED ITS DISCRETION, AS ITS CONCLUSION THAT THE FINAL OFFER FOR THE SALE OF THE ASSETS WAS AN ENTIRETIES BID IS INCONSISTENT WITH THE WEIGHT OF THE EVIDENCE PRESENTED AT THE HEARING.
Standard of Review:
Fifth Third appears to argue that the trial court's decision was both an abuse of discretion and against the manifest weight of the evidence. Therefore we will address both standards of review. An appellate court may reverse the judgment of a trial court upon a finding that the trial court abused its discretion in reaching its decision. Booth v. Booth
(1989), 44 Ohio St.3d 142. An abuse of discretion amounts to more than a mere error of law or judgment, but rather connotes an attitude on the part of the trial court that is arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
When reviewing a trial court's judgment under a manifest weight standard of review, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261; Seasons Coal, Co., Inc. v. City of Cleveland (1984),10 Ohio St.3d 77, 80.
Appellant's first assignment of error:
Fifth Third argues that the trial court's decision that the value of the real property was $750,000 if the assets of the Business were sold in their entirety was against the manifest weight of the evidence because Mr. Middleton's appraisal was flawed, Mr. Harnish's appraisal had several important details omitted by Mr. Middleton, Mr. Eppell's testimony supported a lower figure, and the actual amount received for the property was a lower figure. We disagree.
First, Fifth Third argues that Mr. Middleton's appraisal of the property was flawed. Fifth Third questions Mr. Middleton's statement that the real property had a high degree of functionality for industry use because the building lacked a loading dock, had a lower ceiling than is preferable for light industry use, and would not be suitable for expansion and because Mr. Middleton had not noted that the building had a fire suppression system. (3/29/2001 Tr. 48-51). Additionally, Fifth Third points out that some of the property Mr. Middleton compared this property to had loading docks, higher ceilings, possibly sprinkler systems, and were not in the City of Dayton. A final flaw pointed out by Fifth Third was Mr. Middleton's calculation of market rent analysis, which failed to consider additional operating expenses such as maintenance, real estate tax, and insurance.
However, SBA argues that Mr. Middleton's appraisal was a complete, competent appraisal consisting of an interior as well as exterior evaluation of the property and reaching the appraisal figure consistently using three different methods of property evaluation. We agree. Mr. Middleton was a professional appraiser of commercial and residential real property since 1973. Mr. Middleton testified that he had been requested to give an objective appraisal of the property but had not been given an indication of the SBA's expected valuation. Mr. Middleton further explained that he had performed an interior and exterior inspection of the premises. As a result of the interior inspection, Mr. Middleton ascertained that the building contained more interior finished space than usual for industrial buildings. Moreover, Mr. Middleton testified that, in calculating the appraisal value of the property, he had calculated the valuation three times, once with a cost approach, once in an income approach, and once with a sales comparison approach, and had reached the values of $750,000, $750,000, and $760,000, respectfully. Finally, Mr. Middleton was subjected to cross examination by the counsel for Fifth Third, in which Fifth Third pointed out the same flaws as it has raised here. We cannot say that Mr. Middleton's appraisal was so flawed as to deem it not competent, credible evidence.
Next, Fifth Third argues that the appraisal conducted by Mr. Harnish was a detailed comparison analysis in which he considered transactions involving properties with the same auditor's code, similar in size and also within the City of Dayton. Thus, Fifth Third argues that Mr. Harnish's testimony amounted to competent, credible evidence weighing against the trial court's determination. However, as SBA pointed out, Mr. Harnish's principal job is not as a real estate appraiser but rather was working with municipalities to facilitate development transactions involving real estate. Further, Mr. Harnish clarified that, while his company conduct appraisals, they "have licensed appraisers and designated MAI on staff who specifically handle that." Additionally, Mr. Harnish only inspected the exterior of the property while Mr. Middleton inspected both the exterior and the interior of the property. Moreover, Mr. Harnish admitted that only two years prior the property had sold for $875,000 and offered no explanation as to why the property value had decreased so sharply from $875,000 to approximately $335,000 in only two years. Therefore, while Mr. Harnish may have indeed conducted a comparison analysis, we cannot say that his testimony heavily outweighed that of Mr. Middleton.
Finally, Fifth Third argues that the trial court failed to consider the testimony of Mr. Eppell, the receiver, who stated that he had not received any offers to purchase the real estate in excess of $300,000, and the actual events of the auction, in which the only offer separately for the real property was Fifth Third's offer of $300,000. However, Mr. Eppell had focused his attention on trying to find a buyer for the Business itself as he believed it would sell for a greater amount as an ongoing business. Although Mr. Eppell testified that the only offer he had received for the real property had been for $300,000, he admitted that this had been part of an offer to buy the assets of the Business as a whole and that the offeror had only offered to acquire the real estate as an addition to its basic offer. Moreover, Mr. Eppell testified that his marketing efforts had only been ongoing for less than two months and that the advertisements he had placed had only run for two weekends. Moreover, the trial court was present and had the opportunity to observe all of the witnesses and hear the evidence. As for the fact that Fifth Third made the only separate bid at the auction for the real estate and valued it at $300,000, Fifth Third's bid was obviously self-serving as it now attempts to rely on it as evidence that the real property was only worth approximately $300,000. This can hardly be said to outweigh the testimony of an objective appraiser. Moreover, this was not evidence presented before the trial court at the hearing on the valuation of the real property. Therefore, the trial court's determination that the value of the real property was $750,000 was supported by competent, credible evidence in the form of Mr. Middleton's testimony, and we cannot say that the evidence weighs heavily against the trial court's judgment. Fifth Third's first assignment of error is without merit and is overruled.
Appellant's second assignment of error:
Fifth Third argues that the trial court abused its discretion and that its judgment was against the manifest weight of the evidence by finding that the assets of the Business were sold by a bid in the entirety because Fifth Third, who was the last bidder, made a piecemeal bid on the assets and by relying on an unsworn statement by an attorney for JBM. We disagree.
Fifth Third argues that the trial court's judgment that the assets of the Business were sold in their entirety is inconsistent with the evidence presented at the August 31, 2001 hearing on whether the assets were sold in their entirety or piecemeal. At the hearing, a representative for the SBA testified that JBM merely matched Fifth Third's piecemeal bid for the assets. (8/31/01 Tr. 12-13) The President of JBM testified that they purchased all of the assets of the Business stating, "all the parts together sound like the whole thing but the whole thing should have cost me 2.6. All the parts cost me 2.75." (Id. at 22). Although the President of JBM testified that he had not made an entireties bid over $2,600,000, he also stated that he was satisfied with his counsel's statement to the court immediately after the auction that JBM had bought the "whole business" for $2,750,000. (Id. at 21). Additionally, at the hearing immediately following the auction, Mr. Eppell testified that he received a bid for the "business as a whole" from JBM for $2,750,000. (3/30/2001 Tr. 10). Additionally, at that hearing counsel for JBM stood, identified himself and informed the trial court that "JBM bid two point seventy five for the whole business." Additionally, the auction notes of counsel for the Business were entered into evidence and showed that only one entity, Fifth Third, bid on any of the individual assets of the Business. (8/31/2001 Tr. 40-41).
In rendering its judgment that JBM bought the assets of the Business in its entirety, the trial court reiterated the comment by JBM's attorney. Fifth Third argues this was an abuse of discretion because the comment by JBM's attorney was not sworn testimony and therefore, as an unsworn statement, it is hearsay and cannot be relied upon as evidence. However, in the trial court's decision, the statement of JBM's attorney is immediately followed by the court's noting that JBM's president heard the statement of his attorney and was satisfied with the statement. JBM's president testified to his satisfaction with his attorney's comment at the August 31 hearing, which was admissible evidence. Thus, even assuming that JBM's counsel's statement was hearsay and inadmissible evidence, the testimony of JBM's president essentially reiterated the same sentiment and was clearly admissible evidence.
Moreover, JBM, as the initial offeror, had the opportunity to match the totaled piecemeal bids, rather than matching Fifth Third's bid on only one asset. (3/30/2001 Tr. 3-4, 6). Therefore, JBM, in matching the highest bid, could only match the bid by purchasing the assets of the Business in its entirety. The evidence demonstrates that JBM did in fact buy the entire business. We find that competent, credible evidence existed to support the trial court's finding that the assets of the Business were purchased in an entireties bid. Furthermore, we cannot say that the trial court demonstrated an attitude that was arbitrary, unreasonable, or unconscionable. Therefore, the judgment of the trial court was neither against the manifest weight of the evidence nor an abuse of discretion. Fifth Third's second assignment of error is without merit and is overruled.
The judgment of the trial court is affirmed.
BROGAN, J. and FAIN, J., concur.