OPINION
The state appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, which found that there was not probable cause to believe that James L. Cline, a minor, had committed felonious assault. That finding made Cline ineligible to be bound over to be tried as an adult.
On August 24, 2001, a complaint was filed against Cline alleging that he was a delinquent for committing a felonious assault against Paul Graham. On August 29, 2001, the state moved to transfer the case to the General Division of the Court of Common Pleas so that Cline could be tried as an adult. Cline was seventeen years old at the time of the alleged offense. A hearing was conducted on September 12, 2001. After the hearing, the juvenile court concluded that there was not probable cause to believe that Cline had committed the offense. The state filed a motion for reconsideration of the juvenile court's decision in which it pointed out some factual errors therein. The juvenile court did not rule on the motion.
The state raises one assignment of error on appeal.
 "THE JUVENILE COURT ERRED IN FINDING THAT THE STATE HAD FAILED TO SHOW PROBABLE CAUSE TO BELIEVE THAT THE JUVENILE HAD COMMITTED THE OFFENSE OF FELONIOUS ASSAULT."
The state claims that the juvenile court erred in finding that it had not shown probable cause that Cline had committed felonious assault.
At the time of this offense, R.C. 2151.26(C) provided that the juvenile court may bind a child over to be tried as an adult if the child was alleged to have committed an act that would be a felony if committed by an adult and if the court determined that all of the following criteria had been met:
 "(a) The child was fourteen years of age or older at the time of the act charged.
 "(b) There is probable cause to believe that the child committed the act charged.
 "(c) After an investigation, * * * and after consideration of all relevant information and factors, * * * that there are reasonable grounds to believe that both of the following criteria are satisfied:
 "(i) The child is not amenable to care or rehabilitation or further care or rehabilitation in any facility designed for the care, supervision, and rehabilitation of delinquent children.
 "(ii) The safety of the community may require that the child be placed under legal restraint, including, if necessary, for the period extending beyond the child's majority."
In this case, there was no dispute that Cline stood accused of committing an offense that would be a felony if committed by an adult and that he was over the age of fourteen at the time of the alleged offense. The juvenile court's attention focused on the existence of probable cause.
The state called Monica Claxton and Officer Kevin Cooper at the probable cause hearing. Claxton testified to the following version of events.
Claxton, Tommy Duncan, Cline, and others had been drinking beer together at Claxton's house late in the evening on August 17, 2001. Paul Graham was a homeless man who typically slept at commercial property near Claxton's home and with whom she was acquainted. Graham came to the house more than once through the course of the evening asking for beer. Duncan required Graham to bark like a dog or to sing before being given beer.
Near midnight, after Graham had left the party and then returned again for another beer, Duncan attacked him in the yard of Claxton's house, getting "on top of him hitting him" and giving him a bloody and possibly broken nose. Claxton told both men to leave, but only Graham did. Claxton testified that Graham had walked away without assistance. About this time, Cline disappeared from the party for ten to fifteen minutes. When Cline returned, he had blood on his hands and stated to Claxton, "I think I killed the guy." Cline indicated to Claxton that the attack had occurred at the nearby corner of Troy and Dell Streets. Claxton headed toward the corner in question, but turned back when she saw that there were police cars at that location. The next day, after she learned that the police knew that she might have information about the crime, Claxton called the police to report what she knew about Graham's attack.
Dayton Police Officer Kevin Cooper testified that he had been informed by citizens about "a dead body" at the corner of Troy and Dell Streets in the early morning hours of August 18, 2001. He testified that there had been a large amount of blood on the ground around Graham's head, and that he had searched for a trail of blood in an effort to see where the attack had begun. He stated that there had been a few relatively small drops of blood down the block, but not enough to follow. Cooper could not say whether the droplets led toward or away from the location where Graham was found. To Cooper's knowledge, Graham had remained in a coma since the time of the attack.
At a probable cause hearing, a juvenile court does not consider whether the accused minor is guilty of the offense charged, but simply whether there is probable cause to believe that he is guilty. State v.Iacona, 93 Ohio St.3d 83, 93, 2001-Ohio-1292.
"* * * [T]he state must provide credible evidence of every element of an offense to support a finding that probable cause exists to believe that the juvenile committed the offense * * *. In meeting this standard the state must produce evidence that raises more than a mere suspicion of guilt, but need not provide evidence proving guilt beyond a reasonable doubt." (Citations omitted). Id.
We are well aware that the trial court is entitled to deference on issues of credibility because of its ability "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273. Thus, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Guysinger (1993), 86 Ohio App.3d 592, 594. An appellate court must determine de novo, however, whether the trial court's conclusions of law, based on those findings of fact, were correct. Id.
Notwithstanding the deference we must give to the lower court's findings of fact, in this instance we are reversing and remanding for the juvenile court to state its reasons for finding that the state had not established probable cause to believe that Cline had assaulted Graham. From our review of the record, it appears that the juvenile court acted upon a misapprehension of the evidence presented, namely, its finding that Duncan had also left the party around the time of the attack and therefore could have been the perpetrator. No evidence to this effect was presented. The state pointed out this erroneous factual conclusion in its motion for reconsideration, but the trial court did not rule on that motion. The trial court also concluded that there was "no evidence by anyone in this matter that James Cline touched Paul Graham in any way at all." Although the state's witnesses did not have first hand knowledge of the assault that inflicted Graham's most serious injuries, Cline's statements to Claxton upon returning to her home supported the inference that he had viciously attacked Graham. These statements also indicated that he had just come from the intersection where Graham was found. Moreover, Claxton's testimony established that Cline had had the opportunity to attack Graham by leaving the party for ten to fifteen minutes around the time of the attack. Claxton's testimony about Graham's physical condition when he left her house and Officer Cooper's testimony about his inability to follow a trail of blood from the site where Graham was found also tend to prove that the injuries inflicted by Duncan at the house were not the injuries that put Graham in a coma. Based on our review of the record, the juvenile court appears to have placed undue emphasis on the possibility that Duncan had committed the crime in question and discounted the evidence that Cline had committed the crime without sufficient justification. It may well be that the juvenile court simply did not believe the testimony of Monica Claxton. If that be so, the juvenile court should say so. Given Claxton's unrebutted testimony, we cannot infer that disbelief was the juvenile court's basis for finding no probable cause. Accordingly, the case will be remanded for the juvenile court's explanation as to why the state's evidence did not establish probable cause to believe that Cline had assaulted Graham. Upon remand, the juvenile court is free, of course, to reevaluate the evidence as to probable cause.
The assignment of error is sustained.
The judgment of the juvenile court will be reversed, and the matter will be remanded for further proceedings.
BROGAN, J. and GRADY, J., concur.