OPINION.
{¶ 1} Appellants Peter Miscoi and Palletta Brown appeal the decision of the Court of Common Pleas, Stark County, Probate Division. The relevant facts leading to this appeal are as follows.
 {¶ 2} This appeal stems from a will contest involving four siblings. Appellants are the son and daughter of the late Anna Miscoi. Appellees Susan Rogers and Barbara Gumm are Anna's other daughters. Anna executed several testamentary documents in her life, the first of which was a will prepared in June 1967. In said will, Anna bequeathed her entire estate to her then-living husband, Paul, with the provision that Peter, Palletta, Susan, and Barbara would take equally should Paul predecease Anna. In 1984, Anna prepared a codicil making Susan the alternate executrix.
 {¶ 3} On June 23, 2000, Anna executed a new will, once again bequeathing her entire estate to her husband, with the provision that Peter, Palletta, Susan, and Barbara would take equally should husband Paul predecease Anna. The alternate executor provision was expanded, such that if Paul were to predecease Anna or otherwise fail to serve as executor, Susan would serve in that capacity, with a similar contingency plan in the following order: Peter, Palletta, and Barbara. Survivorship deeds were also prepared at about this same time, also on a share alike basis.
 {¶ 4} Paul died in July 2000. By this time, Anna's physical health was declining. She was incontinent and required a wheelchair. In early September 2000, Susan moved Anna into her home in Stark County. Shortly thereafter, Peter and Palletta met with an attorney in Akron, who assisted them in filing an application for the appointment of a guardian in Summit County, Anna's county of residence prior to moving in with Susan. The Summit County Probate Court issued an ex parte order restraining Anna's assets on September 27, 2000, pending the results of the guardianship proceedings. Anna underwent a competency evaluation in December 2000 per the orders of the Summit County Probate Court. Dr. Cleveland of the Summa Center for Senior Health found her to be competent, as did two of her personal physicians. Peter and Palletta thereafter withdrew their guardianship application, with the agreement by Anna that a conservator would instead be appointed.
 {¶ 5} In January 2001, Anna, with the assistance of counsel, executed a new will. In contrast to her previous wills, she now directed that Peter and Palletta would take just $500 each, with the residual estate to pass to Susan and Barbara and their respective spouses. However, Susan and her husband were bequeathed the entire interest Anna's Summit County residential property. According to Palletta, neither she nor Peter was aware of the January 2001 will until after Anna died in May 2001.
 {¶ 6} Upon the probating of the will in Stark County Probate Court, Peter and Palletta alleged that Susan had exercised undue influence over Anna by moving her from Akron to Susan's residence and encouraging her to make the aforesaid changes in her testamentary disposition. The matter was tried to the court without a jury in October 2002, following which the court ordered the will admitted to probate, finding Peter and Palletta had not met the burden of proof as to undue influence on the testator at the time of execution.
 {¶ 7} Peter and Palletta timely filed a notice of appeal. They herein raise the following sole Assignment of Error:
 {¶ 8} "I. The trial court erred in determining the last will and testament of Anna Miscoi, dated January 26, 2001, valid and not the product of undue influence exerted by defendant-appellee, Susan Rogers."
 I. {¶ 9} In their sole Assignment of Error, appellants challenge the trial court's judgment regarding the issue of undue influence. The elements of undue influence are: 1) a susceptible testator; 2) another's opportunity to assert undue influence on the testator; 3) improper influence exerted or attempted; 4) a result showing the effect of such influence. Coventry v. Turrin (April 11, 2000), Tuscarawas App. No. 1999AP040023, citing In Re Estate of Smith (1997), 120 Ohio App.3d 480,486; West v. Henry (1962), 173 Ohio St. 498, 510.
 {¶ 10} In support of their position, appellants point out that Anna's intent for thirty-three years (from 1967 to 2000), as expressed in her various testamentary documents, was that her four children would share and share alike upon her passing, assuming she survived her husband. Then, appellants note, Anna abruptly changed her historically consistent intent less than six months before her death, while living with the main devisee, Susan. Appellants contend Susan moved Anna to Stark County without consulting the rest of the family. They further point to testimony by Anna's conservator, Attorney George Wertz, that he observed Anna to be frail, confused about her assets, and "uncertain in her thinking." Tr. at 79. Appellants also note that the January 2001 will was drafted by a second Canton attorney after an attorney in another area firm declined to prepare the requested document. Appellants further direct our attention to the following exchange between the probate judge and Barbara Gumm's husband:
 {¶ 11} "THE COURT: Prior to we have heard testimony that the reason this Anna Miscoi was removed from her own home to her daughter's home was because she fell. Cause she fell. In (sic) you told us that you knew two weeks before that she was going to be moved when the fall was suppose (sic) to have taken in close proximity to the date that she was moved. Now tell me how you, why you, knew two weeks before when there was no fall that she was going to move.
 {¶ 12} "A. I said two weeks before she changed her Will."
"* * *
 {¶ 13} "So you understand, that is in direct opposition to what she has already said. So there is a serious conflict here of facts. As to why this lady was moved on September 10th. I'm hearing two different stories right now and I'm getting more and more concerned as to why she was moved when she was perfectly safe in her own home.
 {¶ 14} "NON-IDENTIFIABLE VOICE: I think we can clear that up.
 {¶ 15} "THE COURT: I think you better because it is not looking well for Ms. Rogers at this moment." Tr. at 206-207.
 {¶ 16} Nonetheless, as an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E.Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 17} Appellees Susan and Barbara argue in response that Susan's relocation of Anna was not based on a scheme to isolate her, but to cope with her increasing need for full-time physical care. The four children, even working in shifts, were not able to be with Anna around the clock. Susan testified that her decision to move Anna came to final fruition when she learned her mother had fallen and bruised herself on two occasions in a matter of a few days. Tr. at 210. Palletta testified that she spoke to her mother by telephone several times each week after the move, and was never denied entrance when she went to visit. Mr. Rogers testified Anna left messages for Peter on his answering machine during the time period in question, but he did not return them. Anna patently resisted the attempted guardianship, objecting in particular to being in a position of having to prove her competency. Even Palletta testified during cross-examination that Anna's independent personality chafed against someone else controlling her person and finances. Tr. at 139. Witnesses such as Anna's physical therapist, her next-door neighbor, and Susan herself, who dealt with Anna on a much more frequent basis than did her conservator, Attorney Wertz, all testified that Anna was still quite sharp mentally, despite her physical limitations. Such evidence may have provided valid alternative explanations in the mind of the trier of fact for Anna's decision to change her will at a point after the commencement of the ultimately uncompleted guardianship action. Ohio courts have often emphasized that the finder of fact is best able to determine the credibility of the evidence, and this court must refrain from substituting our judgment on a cold record for that of the fact finder.Seasons Coal Company, Inc. v. City of Cleveland (1984), 10 Ohio St.3d 77. Upon review, we find the trial court's judgment is supported by the record.
 {¶ 18} Accordingly, appellants' sole Assignment of Error is overruled.
 {¶ 19} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Probate Division, Stark County, Ohio, is affirmed.
Wise, J., Hoffman, P.J., and Farmer, J., concur.