JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Daniel Winegar ("Winegar"), has appealed from an order of the Cuyahoga County Court of Common Pleas that found judgment in favor of plaintiff-appellee, Columbia Steel Wire, Inc. ("Columbia"), in the amount of $15,386.27. For the following reasons, we affirm.
 {¶ 2} On May 1, 2006, Columbia filed a complaint for breach of an oral agreement against Winegar. Winegar was employed with Columbia as a steel salesman for approximately one year. There was no written contract of employment, and Winegar contends that there was no express or implied agreement between the parties regarding his at-will employment with Columbia.
 {¶ 3} Prior to trial, the court by journal entry granted Columbia's unopposed motion to dismiss Winegar's counterclaim for failure to state a claim. This ruling is not a subject of this appeal.
 {¶ 4} On March 9, 2007, the matter proceeded to a bench trial and the following testimony was heard.
 {¶ 5} Two representatives of Columbia, its president and bookkeeper, testified on its behalf, with two exhibits entered into evidence. Plaintiffs Exhibit One consisted of the sheets for each deal or sale attributable to the sales efforts of Winegar, reflecting the gross profit and breaking down the commission on the basis of 60 percent for Columbia and 40 percent for Winegar. Plaintiff's Exhibit Two reflected the difference between the amount paid to Winegar as a draw against *Page 4 
commissions and commissions that were attributable to his sales efforts. The bookkeeper testified that Winegar was advised at all times about the contents of these records. Winegar testified on his own behalf.
 {¶ 6} Columbia's president, Martin Koppelman, testified that Winegar would be paid on the basis of a draw against commissions earned. Koppelman further testified that Columbia paid Winegar a total of $37,144.24, but that his earned commissions only totaled $21,757.97. This left a balance due to Columbia Steel of $15,386.27. (Tr. 13.) The following colloquy took place during direct examination of Koppelman by counsel for Winegar:
 "Q. Did there come a time when Mr. Winegar quit working for the company?
 A. Yes.
 Q. At that time did you make the demand upon him for the repayment of the overdraws that he had taken?
 A. What is customary in the industry —
 * * * is that you cut back. * * *. Cut back on a person's draw to try and get it equalized to a point where they are not that much ahead of the company, which I did. I started talking to him that I was going to start cutting the draw back so we could get back to an even keel.
 Q. And is it at that time that he resigned his work from the company?
 A. Yeah. I told him — he went on vacation and begged me for a check, which I shouldn't have done, but I gave it to him. And he went down to Florida. And when he came back I said, `Dan, It's just too far out of kilter. I've got to cut your draw back until this *Page 5 
gets back to an even keel.' And he stood up, and he said, `I can't work for no money,' and he walked out.
 Q. And has he ever repaid any of that money on the overage for the draws for the commissions to the company?
 A. No." (Tr. 13-14.)
 {¶ 7} Winegar testified that it took nine months for Koppleman to tell him that his draw exceeded his commissions earned, and that when he did tell him, he indicated he would take away the draw completely until Winegar's commissions exceeded the amount already drawn. (Tr. 30.) Winegar testified that it was standard custom in the steel industry that a salesperson never repaid a draw. During cross-examination of Winegar by appellee's counsel, the following testimony took place:
 "Q. Your defense is that you were not forgiven for the amount of the draws that you earned over and above the commissions that you earned. Is that correct? Isn't that what you're saying?
 A. Yes." (Tr. 33.)
 {¶ 8} Winegar further stated that it was Koppelman's fault that Winegar's draw had exceeded his commission share because, although he had brought orders to Columbia, Koppleman took the money that Winegar earned to pay other Columbia bills, rather than purchasing steel to fill other orders secured by Winegar.
 {¶ 9} On the record the court stated that "the defendant is going to stipulate as to the commissions that were earned and paid, as well as the draws received, the amounts. Correct?" Counsel for Winegar responded "Correct." (Tr. 6.) Further, the court stated that "[t]he only issue in dispute was whether the defendant is *Page 6 
obligated to reimburse the company for those draws not offset by the commissions. Correct?" Counsel for Winegar responded "Correct." (Tr. 6.)
 {¶ 10} During the cross-examination of Winegar the court asked, "[s]o in other words you agree that he [Koppleman] should have adjusted your draw down to more in line with your commissions?" Winegar responded "[h]e should have done it a lot earlier or discussed — taken the responsibility." (Tr. 34.)
 {¶ 11} At the close of Columbia's case, Winegar's counsel moved for a directed verdict, which the court denied. Both parties waived closing arguments and findings of fact and conclusions of law. The case was heard and submitted with the trial court rendering judgment in favor of Columbia.
 {¶ 12} Winegar appeals, raising the following sole assignment of error.
 THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT APPELLANT OWED APPELLEE FOR A DRAW ON COMMISSION WHEN NO CONTRACT EXISTED.
 {¶ 13} Both parties cite Blakemore v. Blakemore (1983),5 Ohio St.3d 217, as setting forth the appropriate standard for appellate review of the trial court judgment finding that Winegar owed Columbia for the amount of monies drawn by Winegar over his percentage share of commission earned by him.
 {¶ 14} Although we agree with Columbia that the trial court was correct in finding certainty rather than ambiguity in terms of the parties' agreement, and rendering money judgment in its favor based thereon, for reasons the stated herein, we disagree with the standard of review suggested by Columbia and Winegar. *Page 7 
 {¶ 15} Contracts that are unambiguous present questions of law for the court.
 {¶ 16} See Abboud v. Robertson (Aug. 2, 2001), Cuyahoga App. No. 78028, citing Maines Paper Food Serv., Inc. v. Eanes (Sept. 28, 2000), Cuyahoga App. No. 77301.
 {¶ 17} We are of the opinion that the appropriate standard of review in the within appeal is whether the trial court's judgment was against the manifest weight of the evidence. As stated by the Ohio Supreme Court in Seasons Coal Co., Inc. v. City of Cleveland (1984), 10 Ohio St.3d 77,
 "While we agree with the proposition that in some instances an appellate court is duty-bound to exercise the limited prerogative of reversing a judgment as being against the manifest weight of the evidence in a proper case, it is also important that in doing so a court of appeals be guided by a presumption that the findings of the trier-of-fact were indeed correct.
 The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. The interplay between the presumption of correctness and the ability of an appellate court to reverse a trial court decision based on the manifest weight of the evidence was succinctly set forth in the holding of this court in C.E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279 * * *:
 Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. See, also, Frankenmuth Mut. Ins. Co. v. Selz (1983), 6 Ohio St.3d 169, 172; In re Sekulich (1981), 65 Ohio St.2d 13, 16
* * *." Id. at 80. *Page 8 
 {¶ 18} Winegar argues that the trial court's finding was improper because the record does not contain any evidence that he owed Columbia a draw on his commission, as Columbia failed to show by a preponderance of the evidence all elements of a contract, express or implied, and that the parties agreed to alter their at-will employment relationship.
 {¶ 19} This argument is unfounded. The trial court heard all of the evidence, including the testimony of the witnesses and testimony regarding the two exhibits, and determined the credibility of the witnesses having had an opportunity to observe their demeanor. In doing so, the trial court made an implied determination that there was in fact an agreement regarding renumeration of the parties for effort expended during the period of the at-will employment. (Tr. at 5-6, and Final Judgment Order of 3/13/07.) For this reason, we give deference to the trial court as directed in Seasons Coal.
 {¶ 20} Given the responses of Winegar and Winegar's counsel to the direct questions of the trial court, it was not against the manifest weight of the evidence for the trial court to find that Winegar owed Columbia the balance of the amount of monies drawn by appellant over the commission earned by him, which undeniably by agreement was 40 percent of the profit earned from his sales.
 {¶ 21} Appellant raised the affirmative defense that Columbia's recovery was barred by the doctrines of laches and estoppel, and the trial court in its questioning of Winegar asked specifically about this defense to an agreement. Winegar does *Page 9 
not raise as error failure of the trial court to find the defense precludes Columbia's recovery, nor did he affirmatively argue so during trial. Winegar instead argued that there was no meeting of the minds and no contract.
 {¶ 22} The trial court, by its finding without opinion, impliedly found that Columbia showed by a preponderance of the evidence all of the elements for breach of contract, including the existence of the agreement, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.
 {¶ 23} Given the status of the record presented to us, this court finds that the trial court did not err in entering judgment against Winegar in favor of Columbia. Appellant's sole assignment of error is overruled.
 {¶ 24} Accordingly, the judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
It is ordered that appellee recover from appellant costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 10 
 KENNETH A. ROCCO, P.J., and PATRICIA A. BLACKMON, J., CONCUR. *Page 1